(107 App. Div. 415.)

### EMPIRE REALTY CORP. v. SAYRE.

(Supreme Court, Appellate Division, First Department.　September 29, 1905.)

1. APPEAL—FINDINGS—ABSENCE OF EXCEPTIONS.

In the absence of exceptions to the findings of fact, the appellate court must adopt the facts therein stated as the basis on which to rest its determination as to the correctness of the legal conclusions.

2. EVIDENCE—PRESUMPTIONS.

In the absence of evidence to the contrary, it will be presumed that the owner, in the erection of a building in a city, observed the preliminary requirement of filing with the proper officials the necessary plans, and that the building was erected with the consent of the city after the approval of the plans.

3. VENDOR AND PURCHASER—MARKETABLE TITLE—ENFORCEMENT OF CONTRACT—DISCRETION OF COURT.

A purchaser under a contract requiring the vendor to give a marketable title will not be compelled to take property, the possession of which he may be obliged to defend by litigation, unless the defect in the title is a mere possibility, in which case the court, in the exercise of a sound discretion, may compel the purchaser to complete his contract.

4. SAME—AGREEMENT TO CONVEY MARKETABLE TITLE—COMPLIANCE—SUFFICIENCY.

A vendor agreed to give a marketable title. The premises consisted of a corner lot in a city on which a building stood. The lower portion of the building was of stone. The outer surface of the stonework projected two inches over the street line and within that of the sidewalk, which might be withdrawn from the use of the public. The encroachment did not affect easements of light, air, and access possessed by adjoining property owners. The building had been standing for about five years without objection from the city. *Held*, that the possibility of action by the city to remove the encroachment was so remote that it should be disregarded in determining the marketability of the title.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, §§ 245, 255–258.]

5. EVIDENCE—JUDICIAL NOTICE.

The appellate court will take judicial notice of the fact that the Legislature has sanctioned the continuance of encroachments on public streets in a city.

6. VENDOR AND PURCHASER—INCUMBRANCES—EVIDENCE.

A vendor agreed to convey property free from incumbrances. It appeared that in a corner of the building on the land to be conveyed, and running from the top to the bottom, there was a triagular space; one side being formed by a party wall, and the other side being formed by interior walls of the building. The triangular space was occupied by a stairway, with doors opening on it from each floor of the building and the adjacent building, and the stairway was used as a storage place by the tenants of the adjacent building. At the time the leases with the tenants were made, there was a common owner of the two buildings. *Held* not to establish easements in favor of the tenants in the adjacent building.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, §§ 245, 255–258.]

7. ESTOPPEL—BY CONTRACT.

Where, at the time one contracted to sell premises by a conveyance containing covenants against incumbrances, he was the owner of an adjacent building, he was estopped from asserting an easement against the premises to be conveyed in favor of the adjacent building.

**8. Same—Failure to Convey Good Title—Damages—Broker's Commissions.**
    Where a vendor, without fraud, is unable to convey a marketable title
    pursuant to his agreement to convey, the purchaser is not entitled to dam-
    ages for the loss of his bargain, beyond the money paid, with interest
    and expenses resulting from the obligations of the contract, but excluding
    commissions paid to a broker for services in procuring the contract.

Appeal from Special Term, New York County.

Action by the Empire Realty Corporation against Reginald H.
Sayre. There was a judgment dismissing the complaint and award-
ing damages to defendant, and plaintiff appeals from so much of
the judgment as dismissed the complaint, and defendant appealed
from the portion of the judgment awarding to him damages, on the
ground that it granted insufficient relief. Reversed.

Argued before O'BRIEN, P. J., and HATCH, PATTERSON, and
LAUGHLIN, JJ.

Edward F. Sprague, for appellant.
W. P. Prentice, for respondent.

O'BRIEN, J. This action is brought to compel the specific
performance of a contract for the exchange of real estate, which
the defendant refused to carry out on the ground that the plaintiff
could not give a marketable title to the premises which it agreed to
convey. These premises consist of a corner lot in the city of New
York having a frontage of about 50 feet on University Place and
$82\frac{1}{2}$ feet on Twelfth street, upon which lot is standing a 10-story
building erected in the year 1899 or 1900, and valued in the contract
of sale at $387,500. The title to this property was held to be un-
marketable by the learned court at Special Term, for the reason
that the building encroached upon the two adjacent streets, the na-
ture of the encroachment being described in the third and fourth
findings of fact, which are as follows:

"(3) The lower portion of the building on plaintiff's premises is constructed
of stone, except the doors and windows, and for two stories the stone piers
are channeled longitudinally at regular intervals; the channels being
two inches in depth. The outer surface of this stonework projects both on
University Place and Twelfth street two inches over the street line; the inner
surface of the two channels being on the line.

"(4) As to the two lower stories of the building in question, the superfi-
cial area of the portion of the wall which encroaches on the street is much
larger than the superficial area of the inner surface of the channels. It does
not appear that so much of the stonework which thus encroaches bears any
part of the weight of the building, nor does it appear what the cost would be
of cutting off the projecting stonework, or what effect such cutting would
have on the appearance of the building."

No exception was taken to these findings, and the court must
therefore adopt the facts there stated as the basis upon which to
rest its determination as to the marketability of the title. In ap-
proaching the consideration of his question it must be borne in
mind that there is no claim made that the encroachment affects
any property rights in and to the easements of light, air, and access
which may be possessed by owners of other property abutting upon

these streets. It is also to be observed that the encroachment is within the stoop and area line, or, in other words, within that part of the sidewalk which in a proper case and by the exercise of proper authority may be withdrawn from the use of the general public. Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159, affirmed 162 N. Y. 642, 57 N. E. 1105. Under these circumstances the only party that has the legal authority to question the right of the owner to maintain the building as it now stands is the city of New York.

As to the city it may be assumed, although there is no evidence upon the subject, that in contemplation of the erection of the building the then owner observed the preliminary requirements of filing with the proper city department, the department of buildings, the necessary plans, and that the building was erected with the consent of the city after it had approved of these plans. Any contrary assumption would be based upon the conclusion that the city officials had failed to perform their duties by permitting an owner to erect a building without complying with the legal requirements, and such an assumption will not be indulged in, in the absence of proof to sustain it. So far as the record shows no complaint has been made by the municipality concerning the encroachment, and no steps have been taken looking toward its removal, although the building has now been standing for about five years. Under these circumstances is not the possibility of hostile action by the city so remote that it should not be regarded as affecting the marketability of the title? Would this not be a case where the principle "de minimus non curat lex" would apply?

It is undoubtedly the rule of law that a purchaser will not be compelled to take property the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one that, if he wishes to sell, would be free from any reasonable doubt that would interfere with its market value. Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966; McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527; Blanck v. Sadlier, 153 N. Y. 551, 47 N. E. 920, 40 L. R. A. 666; Heller v. Cohen, 154 N. Y. 299, 48 N. E. 527; Moot v. Bus. Men's Ins. Co., 157 N. Y. 201, 52 N. E. 1, 45 L. R. A. 666; Brokaw v. Duffy, 165 N. Y. 391, 59 N. E. 196; Salisbury v. Ryan (recently decided by this court and not yet officially reported) 94 N. Y. Supp. 352. But this rule will not operate in every case to bar the enforcement of a contract of sale. As said in Cambrelleng v. Purton, 125 N. Y. 610, 616, 26 N. E. 907:

"If the existence of the alleged fact which is claimed or supposed to constitute a defect in or cloud upon the title is a mere possibility, or the alleged outstanding right is but a very improbable or remote contingency, which, according to ordinary experience, has no probable basis, the court may, in the exercise of a sound discretion, compel the purchaser to complete his purchase."

See, also, Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387.

It has been well said that this discretionary power is to be carefully and guardedly exercised, and applied only in cases free from all reasonable doubt (Ferry v. Sampson, supra; Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844; Mutual Life Ins. Co. v. Woods, 121 N. Y. 302, 24 N. E. 602); but, when such a case arises, then the court will not refuse to exercise it. In the present case the encroachment is slight; and the rights of abutting property owners, as already indicated, are not affected by it. It was not caused, so far as the record shows, through either bad faith or willfulness on the part of the owner who erected the building, and the city has acquiesced in the situation for five years. In view of all these facts it seems to us that the possibility of an attack is so remote as to take the case out of the operation of the general rule and place it within the exception, where the court should exercise its discretion and direct that the contract be enforced.

Our conclusion in this respect is strengthened by the fact, of which we can take judicial notice, that twice within recent years the state Legislature has sanctioned the continuance of greater encroachments upon public streets. By chapter 610, p. 730, of the Laws of 1896 it was provided that:

"If the front or other exterior wall of any building now standing in said city shall extend not more than four inches upon any street, avenue or public place, such wall shall not be removable, unless an action or proceeding shall be instituted by or in behalf of * * * the city of New York within the period of one year from the passage of this act, for the removal of said wall."

And in 1899 a similar act was passed (chapter 646, p. 1429, of the Laws of 1899) legalizing walls theretofore erected which projected not more than 10 inches upon the street, unless an action for their removal should be commenced within a year from the passage of that act. This legislation is of some importance as indicating, to an extent at least, the attitude which the city and the state may be expected to take in the future in relation to buildings erected subsequent to 1899 in good faith and upon plans which the city has approved, but which buildings may to a slight extent encroach upon a public thoroughfare.

We think that the contingency of an attack upon this title is so remote that a reasonably prudent man would not refuse to accept it, and that the court at Special Term was wrong in its conclusion that the title was unmarketable by reason of the encroachment. See Klim v. Sachs, 102 App. Div. 44, 92 N. Y. Supp. 107; Volz v. Steiner, 67 App. Div. 504, 73 N. Y. Supp. 1006; Webster v. Kings Co., T. Co., 145 N. Y. 275, 39 N. E. 964.

Upon the trial the further claim was made by the defendant that the plaintiff was not entitled to a specific performance of the contract, because it contained the covenant that the property should be free from incumbrance, except one mortgage therein mentioned, and it was urged that the evidence established the existence of another incumbrance, to wit, an easement in favor of the tenants of the adjoining building in a covered stairwell located in the premises

contracted to be conveyed. A careful reading of the record satisfies us that the evidence fails to establish such an easement. In relation to this, it appears that in one corner of the building, and running from the top to the bottom, there is a triangular space, one side being formed by the party wall between this building and the adjoining one, and the other two sides being formed by interior walls of this building; that the triangular space is occupied by a stairway, with a door opening upon it from each floor of this building, and also one opening upon it from each floor of the adjoining building; that the stairway is to an extent used as a storage place for pails, brooms, etc., by the tenants of the adjoining building, and that at the time the leases with those tenants were made there was a common owner of the two buildings. Further than this nothing appears tending to support the claim that those tenants have an easement in the stairwell. It is not shown that by their respective leases they acquired any right to use it, and so far as anything in the record discloses their use of it may be under a mere license, revocable at any time. As to the plaintiff itself, it denied that any such easement existed in favor of the tenants, and, as it was the owner of the adjoining property as well as the premises in suit at the time the contract of sale was made, it would be estopped by reason of its covenant against incumbrances from asserting an easement in its own favor in the stairwell. Furthermore, the existence of this alleged easement was a question of fact, to be determined by the court at Special Term; and not only, as we have already shown, does the evidence fail to warrant any finding that such an easement existed, but no question as to it is properly before this court. Apparently no request was made to the court at Special Term to find as a matter of fact that such easement existed, and no exception appears in the record by which the failure to so find can be reviewed by us.

Other objections were raised to the marketability of the title, on the ground that certain cornices, window shutters, fire escapes, etc., encroached upon adjoining property, and also that there was an encroachment by a cornice of an adjoining building upon the property contracted to be conveyed. We have examined the record in relation to all these alleged defects of title, but we do not consider any of them of sufficient materiality or importance to warrant specific consideration. It is sufficient to say that in our opinion they do not render it unmarketable. It follows, therefore, that the court at Special Term, upon the evidence presented to it, was not justified in holding that the title was unmarketable, and the judgment dismissing the complaint and rescinding the contract must be reversed. If upon a new trial it shall then be made to appear that such an easement exists and constitutes a material incumbrance upon the property, then it would be a violation of the covenant in the contract of sale against incumbrances, and might present a valid ground for holding that such contract was not enforceable.

In view of the possibility of such a situation arising, it may be proper for us at this time to consider the appeal now taken by the defendant from that portion of the judgment which excludes from the damages awarded him the amount paid his brokers as commissions in securing the contract. The measure of damages in this class of cases, where a vendor, although acting in good faith, is not able to convey a marketable title to the land which he has contracted to sell, differs from that which is applicable upon a breach of contract for the sale of personalty. As said by Mr. Justice Woodward in Hertzog v. Hertzog's Administrator, 34 Pa. 418, at page 428, "the man who contracts for a horse and pays the price may recover his value," but "the man who contracts for land and pays the price, but loses it without fraud in the vendor, can at most only recover back his money and interest, or the value of his services rendered, if this was the form in which the consideration was paid." And to this recovery must be added, under the decisions of our state, the expenses which he has reasonably incurred in examining the title to the property. Northridge v. Moore, 118 N. Y. 419, 23 N. E. 570.

Referring to the difference in the measure of damages in the two classes of cases, Chief Justice Beasley, in Drake v. Baker, 34 N. J. Law, 358, said:

"The usual rule on breach of contract is that the party injured shall be indemnified for the loss which he has sustained. If chattels are agreed for to be delivered at a future day, the measure of damage for their nondelivery is the difference between the contract price and market value at the stipulated time of delivery. * * * But with respect to contracts for the purchase of real estate the case of Flureau v. Thornhill, 2 Wm. Bl. 1078, introduced an exception. That exception was that where a vendor discovers after the contract of sale that his title is defective, and is on that account unable to complete his bargain, he shall not be held liable to the vendee for the loss of such bargain."

Referring to this rule, Chief Justice Cockburn, in Sikes v. Wild, 1 Best & Smith, 596, said:

"It probably had its origin in the difficulty in which, in the complicated and highly artificial state of our law relating to real property, an owner of real estate, having contracted to sell, is too frequently placed, from not being able to make out a title such as a purchaser would be bound or willing to take. The hardship which would be imposed on a bona fide vendor, if, upon some legal flaw appearing in the title, he would be liable in all the consequences which would attach upon a breach of contract relating to personalty, and the difficulty which might be thrown in the way of bringing real property into the market if the full liability attached in such a case have, probably by an understanding and usage among those engaged in the transfer of estates, led to this exception to the general law."

But, whatever the origin of the rule may be, we regard the law as settled that where the vendor, without fraud on his part, is unable to convey a marketable title, the vendee is not entitled to damages for the loss of his bargain, beyond the money paid, with interest and expenses resulting from the obligations of the contract itself, although the completion of the bargain might have been profitable to him. But where the vendor is guilty of collusion, tort, artifice or fraud, the vendee is then entitled, not only to compensa-

tory damages, but to damages arising from the loss of the bargain, or the money he might have derived from its completion. Northridge v. Moore, supra; Cockcroft v. N. Y. R., 69 N. Y. 201; Leggett v. M. I. S., 53 N. Y. 394; Pumpelly v. Phelps, 40 N. Y. 59, 100 Am. Dec. 463; Conger v. Weaver, 20 N. Y. 140; Bitner v. Brough, 11 Pa. 127; Morgan v. Bell (Wash.) 28 Pac. 925, 16 L. R. A. 614, 623. As stated by the Court of Appeals in the Northridge Case, supra:

"The vendee in a contract for the sale of land is not ordinarily entitled, upon breach on failure to convey, to recover of the vendor damages measured by the goodness of his bargain or the financial benefit which would result from performance, and it is only when the vendor is for some reason chargeable with bad faith in the matter that recovery beyond nominal damages on that account can be had. If the vendee has paid any of the purchase money, he may recover that back, and he may also recover such expenses as he has reasonably incurred in examination of the title to the property. This is the general rule."

Only one case has been called to our attention where the court has enlarged the measure of damages as above set forth, so as to permit a recovery which would include the commissions paid to a broker. That is the case of Hening v. Punnett, 4 Daly, 545, decided at Special Term in 1873, where an action was brought by a vendor to recover from the vendee the damages caused by the latter's failure to complete the purchase, and the court, without discussion or citation of authority, held that he was entitled to recover as damages the commissions which he had paid his broker. The General Term of the Superior Court of New York, however, in 1893, specifically refused to follow the Hening Case in the later case of Steers v. Laird, 3 Misc. Rep. 408, 23 N. Y. Supp. 158. In that case the plaintiffs had engaged a broker to sell their house, and an informal agreement was executed by which the defendant agreed to purchase it, but afterward refused to carry out the contract, and the plaintiff sued him for its breach, and claimed as damages the commission which they had paid to their broker upon the execution of the agreement. The court held that they could not recover the commission, and the language of Chief Judge Sedgwick in his opinion commends itself to us. He said:

"I do not see in this commission any matter which is attached to the contract or anything more than the plaintiff's disbursements in their business which they use to be successful. They spent the money to secure a profitable contract. * * * The plaintiffs claim that the commission became a part of the damages from the defendant not performing the contract. In general, I do not see a connection between the paying of the commission and the breach of the contract, of any other kind than would exist between the latter and the expenditure of any other money or effort to procure the contract. As soon as the contract is made the plaintiffs become possessed of the thing out of which they expect to reimburse themselves for their expenditures and to make their profits. They do not expect. in fact, to be losers, and, if it occurs, they cannot expect to have their losses made good that came from voluntarily paying money for their own benefit in the shape of a commission, which had nothing to do with the obligations of the contract, and from which the defendant received nothing. It is not correct to consider that the plaintiffs in a legal sense have lost the value of the contract as it was. Their contract has the value of an action for damages and for specific performance. It is not to be said that they thought they would get the land without difficulty. They knew that all they got was a contract."

It is to be observed that the broker's commissions which the present defendant seeks to recover had nothing to do with the obligations of either party under the contract itself. The commissions were not incurred in performing that contract, but in procuring it. The recoverable damages are such as flow from the breach, and they include, in addition to the amount paid upon the purchase price, only the expenses, incurred in the attempt to carry out the contract, and which were caused or assumed by its obligations. To this class of damages belong those recovered in Cogswell v. Boehm (Sup.) 5 N. Y. Supp. 67. In that case the vendee had unreasonably refused to accept title, and the plaintiff had thereby been compelled to borrow money to pay a mortgage upon the premises, and it was held that he could recover as his damages the amount of legal commissions paid for securing the new loan and the attorney's fees and disbursements connected therewith. But those expenses, it will be observed, were incurred subsequent to the execution of the contract, and resulted directly from its obligations. They therefore stand upon a basis different from the broker's commissions in the present case, which were paid, not to carry out, but to procure, the contract. That payment was purely personal to the plaintiff, and not within or touching the contractual relations of the parties. The return of the commissions could not have been claimed if the contract had been performed, and the nonperformance of it does not give a right to the defendant to recover them, in the absence, at least, of any provision to that effect in the contract, or any proof tending to show knowledge and assent on the part of the plaintiff which would bind it to the repayment of such commissions. We see no reason upon the facts in this case for enlarging the measure of damages as fixed by the courts in this class of cases extending through a long course of judicial decisions.

We are of the opinion, therefore, that the trial court properly excluded the broker's commissions from the damages which the defendant could recover; but, for the reasons stated in the discussion of the marketability of the title, the judgment must be reversed, and a new trial ordered, with costs to the plaintiff appellant to abide the event. All concur.