LEO N. LEVY CORPORATION, Plaintiff, *v.* J. HENRY DICK, Administrator, etc., et al., Defendants.

(Supreme Court, Kings Trial Term, July, 1921.)

**City of New York — substantial encroachment upon a street renders title to premises unmarketable.**

Any encroachment on a street in the city of New York, whether it be upon the fee or easement, which is not for a public use, is an obstruction and becomes a public nuisance when its removal is demanded by the public authorities.

Where a building encroaches upon a city street in such a way that it would cost $10,000 to make the necessary changes to remove the encroachment, the title to the premises is unmarketable.

The sole power to continue the many existing encroachments upon streets in the city of New York without interference on the part of the municipal authorities, rests now with the legislature.

ACTION on contract for the sale of real property.

10

Charles Burston, for plaintiff.

Henry F. Cochrane, for defendants.

LAZANSKY, J. This action was brought on for trial at a Trial Term of this court, the right to a jury being waived. The complaint alleges that the parties entered into a contract for the purchase by plaintiff from the defendants, and the sale by the defendants to the plaintiff, of premises known as Nos. 277 to 283 Sixth avenue, Brooklyn, being the northeast corner of Sixth avenue and First street — five-story buildings, apartment houses. Plaintiff paid on account of the contract the sum of $2,500. The contract, among other things, provided that title was to be " subject to any state of facts the survey may show and subject to existing monthly tenancies, *provided said survey does not show facts as would render the title unmarketable.*" On the law day defendants tendered a deed of the property, but plaintiff rejected the title upon the ground that the following encroachments of the corner building upon Sixth avenue existed: " 1. The southwesterly corner of the building erected on the premises first above described and designated as ' parcel No. 1 ' encroaches upon Sixth avenue, a public highway in the City of New York, Borough of Brooklyn, to the extent of one foot and five inches beyond the building line, and upon First street, a public highway in the City of New York, Borough of Brooklyn, to the extent of one foot six inches beyond the building line, both of said encroachments running from the concrete footings which support the foundation of the building to the top of the building and that portion of the building which encroaches as aforesaid, being a substantial part of the building." The testimony shows this to be a circular bay window at the corner. " 2. Five piers

or buttresses forming a substantial portion of the southerly wall of the building erected on the parcel first above described and designated as ' parcel No. 1,' and being about five feet in width, * * * encroach upon First street, a public highway in the City of New York, Borough of Brooklyn, to the extent of five inches beyond the building line, and all of said encroachments run from a point thirty inches above the ground to the top of the building. 3. A portion of the southerly wall of the building being about fourteen feet in width, and erected on the premises first above described and designated as ' parcel No. 1,' at the entrance door to the said premises, and forming a substantial part or portion of said wall and building, encroaches on First street, a public highway in the City of New York, Borough of Brooklyn, to the extent of one foot one inch beyond the building line, said encroachment running from the concrete footings which support the foundation of the building to the top of the building. 4. A chimney breast, between six and seven feet in width, forming a substantial part of the southerly wall and of the building erected on the parcel first above described and designated as ' parcel No. 1,' encroaches upon First street, a public highway in the City of New York, Borough of Brooklyn, to the extent of one foot five inches beyond the building line, and said encroachment runs from the concrete footings which support the foundation of the building to the top of the building.'' The encroachments are not disputed. The plaintiff in this action seeks to recover the amount deposited and $500 expenses of examining the title. Defendants ask specific performance. Whether the court at Trial Term would give such relief need not be considered. The question to be decided is whether or not the title tendered was marketable. The proof shows that Sixth avenue and First street are public

highways, the fee to which to the centre lines thereof in front of the property in question remains in the owner subject to the public easement for use as public highways. In front of the property and extending out five feet from it on Sixth avenue and First street there is a space which is characterized as a courtyard with a railing five feet from the building line. The buildings were erected in 1895 under a permit granted by the building department of the then city of Brooklyn. First street is sixty feet in width and Sixth avenue is eighty feet in width. The neighborhood is a residential one and neither street is extensively traveled. Prior to and at the time of the erection of these buildings, and thereafter up to the time of consolidation, there was an ordinance of the city of New York permitting a courtyard space one-twelfth of the width of the street. After consolidation there were ordinances general and special permitting courtyards, but these have been repealed. Plaintiff relies entirely upon the case of *Acme Realty Co.* v. *Schinasi*, 215 N. Y. 495, which was an action in equity to compel defendant to purchase certain real estate from plaintiff. Defendant objected to the title and refused to accept it on the ground it was unmarketable because of the existence of certain projections of parts of the building which constituted encroachments beyond the building line of both One Hundred and Sixteenth street and Manhattan avenue, in the Borough of Manhattan. These encroachments were substantial and encroached upon the building line one foot; two oriel windows, constructed of masonry, extending from the bottom of the second story to the corner of the roof; one bay window, extending from the basement to the roof; one oriel window on the Manhattan avenue side, extending from the bottom of the third floor to the roof. After reviewing authorities upon the subject, and particu-

larly *Broadbelt* v. *Loew,* 15 App. Div. 343; affd., by Court of Appeals on opinion below, 162 N. Y. 642, and the theretofore existing policy of the municipality to acquiesce in the practically universal custom of encroaching upon the streets with various building projections, the court said (p. 505): " The projections on the plaintiff's building, some of which have been found by the Appellate Division to be encroachments of substantial character upon the two streets by which the premises are bounded, may not be public nuisances so long as they are sanctioned by the permissive ordinance and the permit of the building department, but may be converted into such nuisances at any moment when the municipal authorities exercise the power to direct their removal. When the case of *Broadbelt* v. *Loew* was decided the exercise of that power was regarded as an extremely remote possibility. At the present time, in view of the changed policy of the city, it is impossible for the courts to take that view. We know that it has recently been exercised with reference to many encroachments that once were considered immune from municipal interference, and that the courts have upheld the action of the public authorities.

" In these circumstances it cannot be said that a vendor has a marketable title if his building encroaches upon the public street to such an extent as to threaten a vendee with a substantial loss in the fee and rental value of the premises and a burdensome expense in altering the building to meet the requirements of the law. A vendee has the right to a title that will enable him to hold his land in peace and to be reasonably sure that no flaw or doubt will arise to affect its marketable quality and value." With this proposition in its application to the case under consideration by the Court of Appeals the defendants

have no quarrel, but they insist that that case has no application to the case at bar because the city of New York only has an easement in the bed of the street, while in the *Acme* case the city owned a fee. I confess I cannot see any difference in the application of the rule stated in the *Acme* case whether or not the city owns the fee of the street or only has an easement. In the *Acme* case the court stated as the basis of the decision (at p. 502): " The title to the streets of the city of New York rests in the municipality as trustees for the public, and no grant or permission can · be legally given that will interfere with their use by the public. The right of the public to the use of the streets is absolute and paramount." The obligation of a municipality with reference to the streets and their use for the benefit of the public is stated in more detail in *City of New York* v. *Rice,* 198 N. Y. 124, where the court says (at p. 128): " It is not a question of discretion within the exercise of which that which is actually an occupation, or obstruction, of the street by an abutting property owner might nevertheless, because of its decorative, or artistic construction as enhancing the attractiveness of the streets, or park thoroughfares, be permitted. It is a question, simply, of the existence of any power in the municipality to consent to a permanent use of any part of a street for private purposes. That the construction of this wall was for the private purposes of the owner of the property, inclosed by it, is indisputable and it cannot be material how far it was a decorative feature of the neighborhood, if neither municipal assembly, nor park department, was vested with authority to sanction its maintenance. The ownership by the city of the fee of the land in the streets is impressed with a trust to keep the same open and for use as such. The trust is *publici juris,* that is for the whole People of the state,

and is under the absolute control of the legislature; in which body, as representing the People, is vested power to govern and to regulate the use of the streets. There is no right in the city to use its property therein, as it might corporate property, nor otherwise than as the legislature may authorize for some public use, or benefit. It follows, from the nature of its title, that the city cannot dispose of the streets for, nor divert them to, private uses. Whatever the power of control, or of regulation, possessed by the legislature, it is restricted in the direction of what may be deemed to be a public use, having in view, of course, the demands of a progressive civilization. The streets were opened for the unrestricted use of the public and the assessments for the costs were levied upon the properties benefited, and were paid, upon the implied promise that they should be maintained, in all their integrity, as public highways. Any erection of permanent and substantial structures thereon, not for a public use, would constitute an encroachment, or obstruction, and would, therefore, be a public nuisance.'' Whether, therefore, the city owns the fee or only has an easement, its power of control is restricted to public use, and any encroachment, whether it be upon the fee, or easement, which is not for a public use is an obstruction, and therefore a public nuisance, or may become such when the public authorities demand its removal. If, therefore, the courts now recognize a changed public policy with reference to such encroachments, it surely can make no difference whether the encroachments be upon a fee or an easement. The defendants further contend that the rule laid down in the *Acme* case has no application to property such as this in the borough of Brooklyn, and in support of that cites from the *Acme* case below (154 App. Div. 397, 411) as follows: '' * * * it can no longer be said

Supreme Court, July, 1921. [Vol. 116.

that the contingency of interference on such thoroughfares as One Hundred and Sixteenth street and Manhattan avenue is so remote that it should not be taken into consideration as affecting the marketability of the title to real estate.'' From this, only a part of a paragraph, the defendants argue that, since there have been no indications of a policy upon the part of the municipality to cause the removal of the many thousands of similar encroachments which it is claimed exist in the borough of Brooklyn, the courts should hold that the likelihood of interference by the public authorities with encroachments in Brooklyn, especially in residential neighborhoods such as this, is so remote that it will not be taken into consideration as affecting the marketability of the titles to real estate. In other words, the argument is that the rule in the *Acme* case in the Court of Appeals should only be applied where the surrounding facts show a likelihood of action on the part of the city authorities. But I do not read any such conclusion out of the *Acme* case in the Court of Appeals. The changed policy of the city authorities is clearly recognized, and in light thereof a new rule is laid down as stated above. It would be complex indeed and bring no end of turmoil in realty affairs if the courts were to guess in each instance whether or not there was a likelihood of the public authorities taking steps to remove the encroachment upon a particular street. Furthermore, there are constantly changing conditions; areas that are to-day residential are to-morrow devoted to business. Each incoming administration may have different ideas with respect to these encroachments. The only safe rule, the changed policy being recognized, is that which is laid down by the Court of Appeals in the *Acme* case in the Court of Appeals and which I am constrained to follow. It

makes no difference that these encroachments do not actually interfere with the use of the street. They are a usurpation of public property by a private owner and are therefore illegal, and the city has the right to prevent their continuance. It will be for the legislature to determine whether these encroachments may remain, and until it acts the city has the power to cause the removal of such obstructions. The defendants, in urging their claim that the *Acme* case has no application to the borough of Brooklyn, refer to chapter 646 of the Laws of 1899, which provides that in any case in the county of New York where a projection did not exceed ten inches the city had to move to have the encroachment moved within a year thereafter, and argue that, since the law was made applicable to the county of New York alone, it will never be the policy to extend the work of removal to the outlying sections of the city, but only to Manhattan borough, where traffic conditions might make such removal necessary. Defendants must have overlooked chapter 473 of the Laws of 1897, applicable to the city of Brooklyn, which creates a Statute of Limitations in the case of encroachments not exceeding four inches. It seems to me that it makes no difference how the question arises, or as between whom it may arise, whether the city of New York is involved in the litigation or not, whether it is a busy street or not, whether it is in Manhattan or not, a title is unmarketable where a building encroaches upon a street in a substantial way. Here it is claimed that it would cost $10,000 to make the necessary changes to remove the encroachments. Surely that is not what the plaintiff intended to buy or what the defendants agreed to give. It is next urged by the defendants that the city of New York has only an easement in the streets and has acquiesced in the use

of that portion of the streets now occupied by the building, and to the extent of such encroachments the easement has been extinguished, citing *Robins Dry Dock* v. *City of New York,* 155 App. Div. 258; affd., 213 N. Y. 631; *Barnes* v. *Midland Railroad Terminal Co.,* 218 N. Y. 91. In these cases it was held in effect that there was an abandonment of highways by a six-year non-user, and therefore defendants claim if a municipality could abandon the whole of a highway it has the power to abandon a part of it. But both of these cases are based upon provisions of the Highway Law, which are that every public highway laid out and dedicated to the use of the public, and every such highway thereafter to be laid out that should not be opened and worked within six years, and all highways that have ceased to be traveled or used as highways for six years should cease to be a road or highway for any purpose whatsoever. It was held that the statute was applicable to the streets of the city where only an easement and not a fee was acquired. But this is an express legislative declaration that the street should cease to be a road. The legislature provided for that which it was otherwise not within the power of the city to do, that is, abandon a highway by not opening and working it or by non-user. As stated before, the city holds the streets in trust for public use, and without legislative sanction it has no power in anywise to give away or relinquish that with which it is entrusted. Besides, these streets have been opened and worked and used for many years. It was significantly said in *Barnes* v. *Midland, supra:* "Obstructions of a highway across part of its width only, narrowing but not closing the line of travel, are not sufficient, however long continued, to put an end to its existence (*Mangam* v. *Village of Sing Sing,* 26 App. Div. 464; affd., on opinion below, 164 N. Y. 560). To have that effect

the obstruction must cover the entire width.'' There is nothing in the language used in either of these cases that warrants the conclusion urged for by defendants, that where there is a partial private appropriation of the easement and this appropriation is acquiesced in by the municipality, then to the extent of its acquiescence it is estopped. There has been no acquiescence in these encroachments. It can hardly be said that because these plans were filed with the building department and a permit granted that the city acquiesced in the encroachments which were the basis of the rejection of the title. The occupation of a part of the highway by an abutting owner does not destroy the public easement. *Mangam* v. *Sing Sing,* 26 App. Div. 464, 468. The acquiescence of the city authorities could not create a grant or release of the easement or work an estoppel. *Deshong* v. *City of New York,* 176 N. Y. 475, 483. The defendants refer to the Code of Ordinances of the city of New York which existed until 1906 (§§ 247, 248). These only have to do with platforms, stoops or steps, porches and doors. The defendants also refer to an ordinance of the city of Brooklyn in existence prior to, at the time of, and until consolidation, and also for a time, to a limited extent, after the charter went into effect, which permitted the maintenance of courtyards in the front of premises similar to those occupied and owned by defendants, to the extent of one-twelfth of the width of the street. In the case at bar there is a five-foot courtyard encroaching to that extent upon the city streets. From this it is argued that since this courtyard has been in existence under this ordinance that these encroachments are within the line of the courtyard, and since the courtyard is an allowable interference with the use of the street that these encroachments are not illegal. There might be some force in

this argument were it not for the fact that the court-yard privilege was an illegal one. *Lawrence* v. *Mayor,* 2 Barb. 577; *City of New York* v. *Knickerbocker Trust Co.,* 52 Misc. Rep. 222; *People ex rel. Cross Co.* v. *Ahearn,* 124 App. Div. 840. It is also contended that the city of New York has lost its easement in this street to the extent of encroachments by adverse possession or prescriptive right. The general rule is as stated in *Woodruff* v. *Paddock,* 130 N. Y. 618, 624: " So an easement may be lost by adverse possession if the owner or possessor of the servient estate claims to own it free from the private right of another and excludes the owner of the easement, who acquiesces in the exclusion for twenty years." Here there is no proof that the defendants ever knew of the encroachments. Of course, if they did not, there could be no claim on their part that they were excluding the city from a part of its easement. That the building department countenanced the erection of the building with these encroachments, if deemed an acquiescence, could not deprive the public of its rights. *Driggs* v. *Phillips,* 103 N. Y. 77. In any event I doubt that there could be adverse possession or prescriptive right against the city of New York so as to destroy public rights or take away the power of public officers to remove the encroachments. *St. Vincent Orphan Asylum* v. *City of Troy,* 76 N. Y. 108; *Mangam* v. *Village of Sing Sing,* 26 App. Div. 464; *Driggs* v. *Phillips,* 103 N. Y. 77. The only question in the case being whether or not the title is marketable, I have, in light of the foregoing, come to the conclusion to decide that title tendered in this case was not marketable. I am not unaware of the difficulties which may confront the owners of real estate in light of the conclusion reached here. If it were dependent upon my own judgment in the matter a

different rule might be applied. The highest court in the state has rendered a decision which it is my duty to follow. Whatever difficulties may be created, and up to the present time there do not seem to have been many, can be readily overcome by legislative enactment. The sole power to continue the many encroachments, which undoubtedly exist, without interference upon the part of the municipal authorities rests now with the legislature. Judgment for the plaintiff. Let findings be submitted on two days' notice on or before the eighteenth of July.

Judgment for plaintiff.