[S. F. No. 14164. In Bank.—July 2, 1931.]

M. J. MERTENS, Appellant, v. JOHN C. BERENDSEN, Respondent.

112

Walter H. Robinson for Appellant.

Thos. R. White and Chas. W. White for Respondent.

LANGDON, J.—This is an action by a purchaser to rescind a contract for the sale of real estate. The plaintiff entered into a written agreement to purchase from the defendant a lot and three-story concrete building on the northeast corner of Kearny and California Streets in San Francisco, for the sum of $150,000. A deposit of $1,000 was paid at the time the agreement was signed. The said agreement provided that the purchaser had ''seven days in which to report any defects in either title or survey''. Within the specified time plaintiff gave notice of rescission and de-

manded the return of his first payment, claiming that the property encroached upon the street, and that the title was consequently defective. Upon the refusal of the defendant vendor to return the deposit, this action was brought.

There is no dispute about the fact of the encroachment, and the evidence sustains the court's finding in that regard, which reads as follows: "That . . . the building on said premises encroached on property belonging to the city and county of San Francisco for a length along the California street frontage of at least 35 feet and to the extent of two inches on the westerly end, tapering to an encroachment of seven-eighths of an inch to the easterly end . . . That said encroachment consists only of the marble veneer at base of buildings and a slight overlap of the concrete behind the marble." The record contains uncontradicted evidence that the overlap could be eliminated at a cost of $200.

The question presented by these facts is, of course, whether the encroachment renders the title of the vendor defective. In the absence of a special express requirement of, e. g., a "perfect" title, it is sufficient if the title be *marketable;* and a marketable title has been defined generally as one free from reasonable doubt. The case of *Kenefick* v. *Schumaker,* 64 Ind. App. 552 [116 N. E. 319], fully discusses the meaning and implications of the term. The court there said (116 N. E. 319, p. 323): "Such a title must be free from reasonable doubt, and such that a reasonably prudent person, with full knowledge of the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept. It must be so far free from defects as to enable the holder, not only to retain the land, but possess it in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will arise to disturb its market value. But a mere suspicion against the title or a speculative possibility that a defect in it might appear in the future cannot be said to render a title unmarketable. It is not required to be free from mere shadows or possibilities, but from probabilities. Moral, not mathematical, certainty that the title is good is all that is required." (See, to the same effect, *Zelman* v. *Kaufherr,* 76 N. J. Eq. 52 [73 Atl. 1048]; *Liberty Oil Co.* v. *Condon*

*Nat. Bank,* (C. C. A.) 291 Fed. 293; and see, also, in general, *Howe* v. *Coates,* 97 Minn. 385 [114 Am. St. Rep. 723, 4 L. R. A. (N. S.) 1170, 107 N. W. 397]; note, 38 L. R. A. (N. S.) 1.)

The effect of encroachments upon the marketability of title is a problem which does not appear to have been directly presented in any California case, but it has received the attention of the courts of other states, and in particular of the state of New York. In this latter jurisdiction a most curious line of decisions may be noticed. The earlier cases, such as *Empire Realty Corp.* v. *Sayre,* 107 App. Div. 415 [95 N. Y. Supp. 371], and *Broadbelt* v. *Loew,* 15 App. Div. 343 [44 N. Y. Supp. 159], held that even a substantial encroachment on the public street did not affect marketability, on the ground that there was no likelihood of interference by the city authorities. These cases were subsequently overruled or disregarded because of a change in municipal policy, which is discussed in *Acme Realty Co.* v. *Schinasi,* 215 N. Y. 495 [L. R. A. 1916A, 1176, 109 N. E. 577]. The court there speaks of the increasing density of population and the spread of business districts, and then says (109 N. E. 577, 579): "It is familiar recent history that these changed conditions have led to the compulsory removal of building encroachments from areas, streets, and blocks where they had always before been permitted. When the late Mr. Justice Patterson wrote the opinion in the case of Broadbelt there was nothing to indicate that there would ever be a radical departure from the early policy of the city with reference to building encroachments on the streets. Since then the change has become an accomplished fact, and its binding force has been recognized in the later judicial decisions." (See, also, *Perlman* v. *Stellwagen,* 115 Misc. Rep. 6 [187 N. Y. Supp. 845]; *Leo N. Levy Corp.* v. *Dick,* 116 Misc. Rep. 145 [190 N. Y. Supp. 238].)

We have before us no evidence of the policy of the municipal authorities of the city of San Francisco, nor would we be disposed to give much weight to such policy in reaching our decision in the instant case. We think that if it should appear that the city has a right of action based upon the encroachment and that the enforcement of that right would cause substantial loss to the owner, the title cannot be said to be free from reasonable doubt. A pur-

chaser should not be compelled to rely upon past acquiescence or mere indifference on the part of city officials to substantial interference with the property rights of the people. Hence we shall treat this case as if the city were prepared to enforce these rights, and we shall determine the question of marketability by considering what would be the result of an action brought by the city against the owner.

The answer seems to be clearly indicated in the cases of *Rothaermel* v. *Amerige,* 55 Cal. App. 273 [203 Pac. 833], and *McKean* v. *Alliance Land Co.,* 200 Cal. 396 [253 Pac. 134]. In the Rothaermel case, a wall encroached about two inches upon adjoining property. A mandatory injunction was sought to remove it. The court said (p. 275 of 55 Cal. App.) : ''We have here a case where a bare legal right unsupported by any damage shown, is sought to be enforced by mandatory writ requiring affirmative personal action to be taken.'' Further, quoting from 14 Ruling Case Law, 317, section 15, the opinion continues: ''It is also true, as a general rule, that the court should not interfere by way of mandatory injunction, even though the injury be clearly established, where there has been a long-continued delay in asserting the right, and a remedy exists at law, or where the injury is so slight as to bring it within the maxim *de minimis,* or full compensation can be made in damages. If there is an adequate remedy at law, no relief will be granted, especially where there is no appreciable damage, and its issuance would require the performance of an act which would be difficult, and involve a considerable expense.'' In the McKean case, the encroachment was from one-half to five-eighths of an inch. The trial court refused to order its removal, and awarded nominal damages in the sum of $10. This court upheld the judgment, saying (p. 399 of 200 Cal.) : ''There was no direct evidence that the encroachment of from one-half to five-eighths of an inch caused any actual damage to plaintiffs, and to our mind the award of the trial court is both wise and just.'' As a result of these decisions it follows that the encroachment of the building involved herein would give the city no right to have it removed, and the owner could not be required to pay more than nominal damages. This being so, there is, we think, no reasonable probability of either the commencement or the successful prosecution of such a suit, which probability would

have to exist before the title could be deemed unmarketable. The problem here turns upon a pure question of law, and this question has, as we have seen, been decided by the courts of this state in holding that neither injunctive relief nor substantial damages may be secured for a slight encroachment.

There is nothing in the cases from other jurisdictions which is inconsistent with the conclusion we have reached. Even in the later New York decisions, the encroachments which were held to render the title unmarketable were substantial ones, which, it was decided, the municipality could have removed, and the removal would have required a considerable expenditure. Thus, in the Acme Realty Co. case, *supra,* the encroachments included show windows, oriel windows, and bay windows of masonry, projecting one foot beyond the building line, a portico of limestone projecting one foot, and a stoop projecting four feet. The court found that the cost of removal would be over $5,000, that proceedings by city authorities were imminent, and that removal would damage the building and decrease its rental and fee value. The opinion states (215 N. Y. 495, 109 N. E. 577, 580) : ''In these circumstances it cannot be said that a vendor has a marketable title if his building encroaches upon the public street to such an extent as to threaten a vendee with a substantial loss in the fee and rental value of the premises and a burdensome expense in altering the building to meet the requirements of the law.'' In *Leo N. Levy Corp.* v. *Dick, supra,* walls, buttresses, and a bay window and chimney projected over one foot, and it was claimed that removal would cost $10,000. In *Klimas* v. *Brumbach,* 116 Misc. Rep. 299 [190 N. Y. Supp. 307], there were eighteen encroachments, consisting of store windows, cellar doors, steps, fire-escapes, cornices and pilasters, the largest extent being five inches. It was held that they were substantial and burdensome in view of testimony that the cost of removal would exceed $3,000. But the court said (190 N. Y. Supp. 307) : ''Practically all of the encroachments mentioned have been disregarded in various decisions . . . In the Acme case the court found it impossible to ignore oriel windows of solid masonry construction from the foundation up, which ·encroached one foot over the street line, because they could not be removed without defacing the entire building, but

platforms, steps, and show windows were not considered serious.'' And in *Gelman* v. *Herrmann*, 118 Misc. Rep. 290 (193 N. Y. Supp. 174), where four bay windows projected one and one-half feet, and the cost of removal and remodeling of the front of the building would only be $300, the court gave specific performance to the vendors, saying (193 N. Y. Supp. 174, 176): ''The premises in question are more than a mile from the business center of Buffalo; the likelihood of interference with the bay windows is very remote; the expense of reconstruction is very slight; the encroachment is trivial; the rental value of the premises is not affected; the value of the premises has in nowise suffered.'' Some doubt is expressed in *Perlman* v. *Stellwagen, supra,* as to whether any encroachment can be regarded as negligible; but most of the authorities clearly distinguish between an immaterial overlap causing no actual damage and removable at slight cost, and a substantial encroachment, requiring costly removal. (See Maupin on Marketable Title to Real Estate, 3d ed., 1920, p. 868.)

We are therefore satisfied with the trial court's conclusion that the title to the property was marketable and that the contract of sale was valid and enforceable.

The judgment is affirmed.

Curtis, J., Richards, J., Seawell, J., Shenk, J., Waste, C. J., and Preston, J., concurred.