[No. A092663. First Dist., Div. Four. Nov. 2, 2001.]

DAVID MELLINGER et al., Plaintiffs and Appellants, v.
TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, Defendant
and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A.2, II.B.1 and II.B.2.

**COUNSEL**

Law Offices of Robert J. Kahn and Robert J. Kahn for Plaintiffs and Appellants.

Miller, Starr & Regalia, Scott A. Sommer and David E. Harris for Defendant and Respondent.

## Opinion

**KAY, J.**—Plaintiffs David Mellinger, Uri Eliahu, Paul Guerin, Geoffrey Strong, and Shalom Eliahu sought coverage under a title insurance policy for damages allegedly caused by an encroachment. The trial court found no coverage as a matter of law. We reverse, concluding the question should have been submitted to a jury. We will remand the matter for trial in accordance with the views expressed in this opinion.

## I. Background

Plaintiffs, under the partnership name The Redwood Group, entered into a contract to purchase a parcel of property in Concord, California. The parcel was approximately two acres in size and the purchase price was $470,000. Plaintiffs intended to resell the property to a builder after obtaining government approval for subdivision of the property. The purchase agreement provided for a lengthy escrow, allowing plaintiffs to seek approval of the subdivision before the close of escrow.

The City of Concord approved plaintiffs' tentative map for a six-lot subdivision of single-family homes. Plaintiffs then completed their purchase of the property, receiving title as tenants in common, with the close of escrow taking place on March 2, 1990. At that time they also purchased a title insurance policy from defendant Ticor Title Insurance Company of California (TICOR).

On March 13, 1990, plaintiffs made a claim on the title insurance policy based on a discrepancy in the location of the northwest property line. TICOR investigated plaintiffs' claim and found no problem with the northwest boundary and no covered claim. Further investigation by plaintiffs, however, revealed a problem on the south side of the property—Treat Boulevard, a busy street, encroached onto the property up to 20 feet (the Treat Boulevard encroachment). Plaintiffs apparently did not resubmit their claim.

On April 20, 1990, plaintiffs entered into a contract to sell the property to S&H Properties. In September 1990, plaintiffs and S&H Properties applied to the City of Concord for a variance from a zoning requirement of 15,000-square-foot lots. Plaintiffs and S&H Properties proposed to dedicate ownership of the portion of the property underlying Treat Boulevard to the city as a condition of the variance. The city's planning commission approved the variance conditioned only on the building of acceptable fencing.

For reasons not clearly reflected in the record, the sale to S&H Properties was not completed. According to Uri Eliahu, the boundary discrepancy caused delays that led S&H Properties to call off the transaction.

Plaintiffs apparently received final approval of their subdivision map in late 1992, and they did deed all or part of the area underlying the Treat Boulevard encroachment to the City of Concord. They continued to hold the property after obtaining final approval of the subdivision map.

In 1994, they sued TICOR. Their complaint was vague as to the basis for any claim against TICOR. Ultimately they stipulated to the dismissal of that action. The stipulation allowed them to submit a new claim to TICOR, presumably for damages resulting from the Treat Boulevard encroachment, and TICOR agreed to waive all defenses it could have asserted based on statutes of limitations or laches.

The new claim asserted a loss of $658,550, including lost profits, holding costs, and lost interest income. When payment in that amount was not forthcoming, plaintiffs filed this action in April 1996.[1] They alleged breach of the insurance contract and bad faith.

At the beginning of trial, the court held a hearing to consider the admissibility of testimony from plaintiff Uri Eliahu on the issue of damages. (See Evid. Code, § 402.) During the hearing, the trial court identified the issue of coverage as one of law and ordered a court trial on the issue. Plaintiffs' counsel pointed out that this was a breach of contract action, not a declaratory relief case, and that there were factual issues to be decided. The trial court disagreed and directed plaintiffs to present their witnesses on the issue of coverage. After hearing testimony from Shalom Eliahu and an expert on real property descriptions, the trial court found no coverage under the insuring clause of the policy and entered judgment in favor of TICOR.

## II. DISCUSSION

### A. Coverage

#### 1. Marketability of Title

Plaintiffs contend the Treat Boulevard encroachment rendered their title unmarketable within the meaning of the coverage provisions of their insurance policy. The policy was a standard form ALTA Residential Policy (June 1, 1987). It covered 14 separate "title risks." TICOR agreed to insure plaintiffs against actual loss resulting from any of the title risks and to defend plaintiffs' title in any court case based on a covered title risk. Under

---

[1]After the complaint was filed, on May 6, 1996, TICOR offered the appraised value of the portion of the property deeded to the City of Concord, $28,000, plus interest.

title risk No. 11, TICOR's duties arose when: "Your title is unmarketable, which allows another person to refuse to perform a contract to purchase, to lease or to make a mortgage loan."

No interpretation of this policy provision appears to be required in this case. Plaintiffs do not argue the coverage provision is ambiguous. ■ Instead, they rely on the meaning of marketable title established by the California Supreme Court: " ' "A marketable title, to which the vendee in a contract for the sale of land is entitled, means a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear on such transactions, be willing and ought to accept." ' " (*Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 649-650 [234 P.2d 625, 40 A.L.R.2d 1238].) Marketable title "must be so far free from defects as to enable the holder, not only to retain the land, but possess it in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will arise to disturb its market value." (*Mertens v. Berendsen* (1931) 213 Cal. 111, 113 [1 P.2d 440] (*Mertens*).) A mere suspicion or speculative possibility of a future defect in title does not render a title unmarketable. (*Ibid.*)

■ We reject plaintiffs' assertion that the Treat Boulevard encroachment rendered their title unmarketable as a matter of law. But we find merit in their alternative argument that whether their title was rendered unmarketable was a question of fact for the jury. The trial court appears to have gone beyond its duty to interpret the insurance policy, which is a question of law (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568]), by determining a factual question as to whether the Treat Boulevard encroachment actually affected the marketability of title (see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶ 4:2, p. 4-1 [determining factual issues affecting coverage]).

The trial court found no coverage "[g]iven the absence of any title in the City of Concord," and that this case came squarely within the holdings of *Lick Mill Creek Apartments v. Chicago Title Ins. Co.* (1991) 231 Cal.App.3d 1654 [283 Cal.Rptr. 231] (*Lick Mill*) and *Native Sun Investment Group v. Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1275 [235 Cal.Rptr. 34] (*Native Sun*). But the fact the City of Concord apparently did not have title to any part of plaintiffs' property does not resolve the question of marketability.

Based on the meaning of "marketable title" established by the Supreme Court, the question is whether a reasonable purchaser, knowing that a third

party might claim an interest in the property, would nevertheless proceed with the transaction. Though many of the facts in this case are undisputed, the question of whether a reasonable purchaser would buy plaintiffs' property knowing the City of Concord or the public might have a vested right to continued use of the Treat Boulevard encroachment remains unanswered. (See *Wilson v. Pacific Coast Title Ins. Co.* (1951) 106 Cal.App.2d 599, 602 [235 P.2d 431] [whether title was defective or unmarketable were questions for the trier of fact].) Plaintiffs offered evidence on the question, but it was not submitted to a trier of fact.

TICOR argues and the trial court found the Treat Boulevard encroachment merely affected market value, not marketability of title. ██ It is undisputed that there is no coverage for physical conditions of property that merely affect land value. (See, e.g., *Hocking v. Title Ins. & Trust Co., supra,* 37 Cal.2d at p. 652; *Lick Mill, supra,* 231 Cal.App.3d at pp. 1660-1662.)

██ The Treat Boulevard encroachment represented both a physical condition and possible interest in plaintiffs' property. To the extent it was a road that crossed a portion of plaintiffs' property, it might have affected the market value of the property. But it also had the potential to affect plaintiffs' ownership or title to a portion of the property. The potential effect of an encroachment on marketability of title was discussed in *Mertens.* In *Mertens,* a purchaser of real property sought to rescind a real estate sales contract after discovering a building on the property encroached onto an adjoining city street. "The question presented by these facts is, of course, whether the encroachment renders the title of the vendor defective." (*Mertens, supra,* 213 Cal. at p. 113.) Title generally need only be marketable; i.e., free from reasonable doubt. (*Ibid.*) "We think that if it should appear that the city has a right of action based upon the encroachment and that the enforcement of that right would cause substantial loss to the owner, the title cannot be said to be free from reasonable doubt. A purchaser should not be compelled to rely upon past acquiescence or mere indifference on the part of city officials to substantial interference with the property rights of the people." (*Id.* at pp. 114-115.)

Ultimately, the Supreme Court found in *Mertens,* as a matter of law, that the encroachment was so insignificant (two-eighths to seven-eighths of an inch) that it would not affect the marketability of title. (*Mertens, supra,* 213 Cal. at pp. 115-116.) And even if the city took action, it would have no right to have the encroachment removed and the owner could not be required to pay more than nominal damages. (*Ibid.*)

We are not inclined to find as matter of law that the Treat Boulevard encroachment was insignificant, or that the City of Concord would have had

no right to assert continued use, if not ownership, of a portion of plaintiffs' property (see, e.g., *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 820-823 [93 Cal.Rptr.2d 193] [discussing implied dedication of private property]). One Illinois court has held that whether title to real estate is marketable is a question of law. (*Rackouski v. Dobson* (1994) 261 Ill.App.3d 315 [199 Ill.Dec. 875, 634 N.E.2d 1229, 1231].) We agree that in many cases marketability can be determined as a matter of law. The uncertainty regarding title may be trivial, as in *Mertens*, or it may be so substantial, such as a competing claim to ownership of the entire parcel, that it is unnecessary to submit the question to a trier of fact. The instant case, however, defies categorization. The Treat Boulevard encroachment affects only a small portion of plaintiffs' property, but arguably it could have dissuaded someone from purchasing the property.

We are also not persuaded that *Mertens* is distinguishable because the encroachment in that case was onto adjoining land, where as here the encroachment is onto plaintiffs' property. According to TICOR, *Mertens* "illustrates that it is the City of Concord that had no title to the encroachment." How *Mertens* illustrates that fact or why that fact is relevant is not explained. What is important was that the Treat Boulevard encroachment represented a possible third party interest in the land described by plaintiff's deed. (See *Davis v. Stewart Title Guar. Co.* (Mo.Ct.App. 1987) 726 S.W.2d 839, 850 [easement for parking in favor of third party rendered fee title of plaintiff at least doubtful].)

The instant case is distinguishable from *Lick Mill*, in which there was no allegation of a possible third party claim to an interest in the plaintiffs' property. Instead, the plaintiffs discovered hazardous substances on their property and incurred costs to remove them. They then sought indemnity from their title insurer for the cleanup costs. (*Lick Mill, supra,* 231 Cal.App.3d at p. 1660.) The Court of Appeal noted the plaintiffs had pled facts relating to marketability of the land rather than marketability of title. (*Id.* at p. 1662.) The hazardous substances merely affected the physical condition of the property and not title; therefore, there was no coverage under the insuring clause for unmarketability of title. (*Ibid.*)

*Native Sun,* the other case cited by the trial court, might be instructive once the underlying factual issues are resolved in this case. *Native Sun* did involve a government claim to an interest in the plaintiff's coastal property. The defendant, TICOR, agreed to defend and indemnify the plaintiff against the claims made by the State of California. (*Native Sun, supra,* 189 Cal.App.3d at p. 1270.) That policy, as does the policy in the instant case,

excepted easements, liens or encumbrances not shown by public records from coverage. Based on this exception, TICOR advised that it would not indemnify for any loss resulting from state enforcement of so-called *Gion-Dietz* rights based on historic public use (*Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50]). The appellate court affirmed the trial court's finding that the only claims to the property asserted by the state with merit were excluded *Gion-Dietz* claims. (*Native Sun, supra,* at pp. 1275-1276.) Any other claims had no merit and did not affect the marketability of title. (*Ibid.*)

TICOR has not shown, factually or legally, that a claim by the City of Concord to an interest in plaintiffs' property would have had no merit. Of course there are certain exceptions and exclusions in the policy that may apply unless the Treat Boulevard encroachment was reflected in the public records.[2] Plaintiffs had an expert witness who opined the encroachment was reflected in the public records. TICOR stated it had an expert who would testify to the contrary. A jury will need to resolve the question. TICOR acknowledges it has the burden to prove plaintiffs' claim was excluded. (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188 [77 Cal.Rptr.2d 537, 959 P.2d 1213].)

The judgment must be reversed and the matter remanded for trial of the disputed factual issues raised by plaintiffs' allegations. Because we reverse, we will discuss the additional points raised by plaintiffs for guidance of the trial court on remand.

2. *Existence of Easement**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Damages*

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[2]Plaintiffs' policy excepted from coverage any rights, interests or claims of parties in possession of the land not shown by the public records. It also excepted any facts about the land that a correct survey would disclose and that were not shown by the public records. The trial court noted there was no need to reach the question of exclusions, but it did observe certain exclusions would apply. The exclusions and exception appearing in the policy, if applicable, may eliminate coverage or limit the amount of damages plaintiffs can recover.

*See footnote, *ante,* page 691.

## III. DISPOSITION

The judgment is reversed. The matter is remanded for trial in accordance with the views expressed in this opinion. Plaintiffs shall recover their costs on appeal.

Reardon, Acting P. J., and Sepulveda, J., concurred.

A petition for a rehearing was denied November 28, 2001, and respondent's petition for review by the Supreme Court was denied February 13, 2002.