Martin J. GREENBERG, Plaintiff-Appellant,

v.

STEWART TITLE GUARANTY COMPANY, Defendant,

SOUTHEASTERN WISCONSIN TITLE COMPANY, INC.,
Defendant-Respondent.

Supreme Court

*No. 91-0497. Oral argument September 2, 1992.—Decided
November 30, 1992.*

(Also reported in 492 N.W.2d 147.)

For the plaintiff-appellant there were briefs (in the court of appeals) by *Michael S. Polsky, Steven R. Schnoll* and *Trebon & Polsky,* Milwaukee and oral argument by *Michael S. Polsky.*

For the defendant-respondent there was a brief (in the court of appeals) by *David C. Williams* and *Allen, Harrison, Williams, McDonell & Swatek,* Lake Geneva and oral argument by *David C. Williams.*

Amicus Curiae brief was filed by *J. Bushnell Nielsen, Joshua G. Vincent* and *Hinshaw & Culbertson,* Milwaukee for Wisconsin Land Title Association.

WILLIAM A. BABLITCH, J.   The issue presented is whether the issuance of title commitments and subsequently issued title insurance policies give rise in Wisconsin to a tort cause of action against the title insurer and/or its issuing agent separate and apart from the contractual obligations of the title policy. Martin J. Greenberg (Greenberg), the appellant, obtained from Stewart Title Guaranty Company, through its agent, Southeastern Wisconsin Title Company, four owner's title insurance policies in the amount of $250,000 each, which insured the interest in title in four condominiums. When Greenberg was unable to sell the condominiums because of an alleged defect in title, he contended that

Stewart and Southeastern were liable not only under the contract, but in addition, for damage in tort for negligence. The circuit court held that the relationship between the parties involved a contract of indemnity and that no tort liability existed in Wisconsin law. We agree, and affirm the judgment of the circuit court.

The relevant facts follow. Martin Greenberg, the appellant, and John Huber (Huber) purchased four condominium units in Lake Geneva, Wisconsin. Before acquiring the condominiums, Greenberg and Huber contacted Stewart Title Guaranty Company (Stewart) through its agent, Southeastern Wisconsin Title Company (Southeastern). Title commitments were provided to Greenberg and Huber. A title commitment is a document which describes the property as the title insurer is willing to insure it and contains the same exclusions and general and specific exceptions as later appear in the title insurance policy. Joyce Dickey Palomar, *Title Insurance Companies' Liability For Failure to Search Title and Disclose Record Title,* 20 Creighton L. Rev. 455, 462 n.39 (1986–87) (citing Levinson, *A Return to Policy Limits* in Prac. L. Inst. Title Insurance In Current Transactions 1983, 278 (1983)). Greenberg stated in his deposition that he received the title commitments from either Stewart or Southeastern.

Stewart, through its agent, Southeastern, then issued owner's title insurance policies insuring Huber's and Greenberg's title interest in the condominiums. Huber and Greenberg purchased the condominiums and, after acquisition, used the units to secure loans from several banks. Huber quitclaimed his interest in the condominiums to Greenberg, who decided to sell the units. Greenberg alleges that he was unable to sell the units because certain liens and encumbrances against the property made it impossible for him to transfer marketa-

ble title. He further alleges that, as a result, his lending institutions obtained a foreclosure judgment, and, after a sheriff's sale of the units, deficiency judgments were entered against him in the amount of $564,771.71.

Greenberg made a claim to Stewart alleging that the titles were unmarketable. Stewart denied the claim and Greenberg brought suit against Stewart and Southeastern. His complaint alleged five claims for relief: (1) negligent misrepresentation; (2) negligence; (3) breach of fiduciary duty; (4) breach of contract; (5) lack of good-faith and fair dealing. Specifically, as to the first cause of action, Greenberg's complaint alleges that Southeastern and Stewart "breached the duties they owed to Greenberg under . . . common law by failing to disclose liens and encumbrances and facts relating to same which were known to . . . [them]." Under the second cause of action the complaint alleges that Stewart and Southeastern "owed Greenberg a duty to base the title insurance commitments and policies for the Units on reasonably diligent searches of the public records," and that they "breached their duties to Greenberg by failing to make reasonably diligent searches . . . which would have disclosed liens and encumbrances of record showing title to the Units to be unmarketable . . .." The circuit court dismissed the first two claims holding that the relationship between the parties involved a contract of indemnity and that no tort liability existed in Wisconsin law. The circuit court dismissed the third claim because Greenberg's complaint did not allege any facts from which the court could find a fiduciary duty. The circuit court ordered further briefing on the breach of contract claim and Greenberg voluntarily dismissed the fifth claim. In addition, the circuit court dismissed Southeastern as a party to the action because the only claim remaining in the lawsuit was the breach of contract

claim and, as the agent, Southeastern was not a party to the contract.

Greenberg appealed from the judgment dismissing Southeastern as a party, and the court of appeals certified the following issue to this court: "Is a title insurance company liable in tort for failure to discover a title defect or does such liability sound in contract only?" We accepted certification from the court of appeals.

Greenberg maintains that he can sue a title insurance company for negligence because the issuance of a title commitment and a title insurance policy places a common law duty on a title company to search and disclose any reasonably discoverable defects in title. According to Greenberg, this duty is separate and distinct from the title company's contractual duties under the title insurance policy. We disagree.

Courts in other jurisdictions are split on the question of whether a title insurance company can be exposed to liability in tort for negligence in searching records. Some courts and commentators have concluded that a title company should be liable in tort as well as in contract if it negligently fails to discover and disclose a defect. *See Title Ins. Co. v. Costain Arizona,* 791 P.2d 1086, 1090 (Ariz. App. 1990); *Shada v. Title & Trust Co. of Fla.,* 457 So. 2d 553 (Fla. App. 1984); *Ford v. Guarantee Abstract and Title Co., Inc.,* 553 P.2d 254 (Kan. 1976); *Heyd v. Chicago Title Ins. Co.,* 354 N.W.2d 154 (Neb. 1984); Joyce Dickey Palomar, *Title Insurance Companies' Liability For Failure to Search Title and Disclose Record Title,* 20 Creighton L. Rev. 455 (1986–87); Comment, *Title Insurance: The Duty To Search,* 71 Yale L.J. 1161 (1961–62). "The underlying notion [of these opinions] is that the insured has the reasonable expectation that the title company will

search the title." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.,* 562 A.2d 208, 218 (N.J. 1989).

Other jurisdictions have refused to impose tort liability on title insurance companies. *See Brown's Tie & Lumber v. Chicago Title,* 764 P.2d 423 (Idaho 1988); *Anderson v. Title Ins. Co.,* 655 P.2d 82 (Idaho 1982); *Horn v. Lawyers Title Insurance Corporation,* 89 N.M. 709, 557 P.2d 206 (N.M. 1976); *Stewart Title Guar. Co. v. Cheatham,* 764 S.W.2d 315 (Tex. App. 1988); *Houston Title Co. v. Ojeda de Toca,* 733 S.W.2d 325 (Tex. App. 1987), *rev'd on other grounds Ojeda de Tora v. Wise,* 748 S.W.2d 449 (Tex. 1988). These courts reason that because a title insurer does not purport to act as anything other than an insurance company, no tort liability exists unless the insurer has voluntarily assumed a duty of searching title for the insured's benefit in addition to the contract to insure title. They further conclude that the issuance of a preliminary report or title commitment is not an independent assumption of a duty to search and disclose reasonably discoverable defects. We find this reasoning, particularly the reasoning of Justice Pollock of the New Jersey Supreme Court in *Walker Rogge,* persuasive.

In *Rogge,* the insured, Walker Rogge, Inc. (Rogge), sued a title insurance company when it discovered that the acreage of the tract of land it purchased was approximately 12 acres, instead of the approximate 19 acres Rogge thought it had purchased. In support of its negligence claim, Rogge pointed to the title company's separate charge for a title examination and to its reliance on the title company to conduct a reasonable search. In response to Rogge's arguments, Justice Pollock, writing for the majority, stated:

> Although we recognize that an insured expects
> that a title company will conduct a reasonable title

491

examination, the relationship between the company and the insured is essentially contractual. The end result of the relationship between the title company and the insured is the issuance of the policy. To this extent, the relationship differs from other relationships conceivably sounding in both tort and contract, such as the relationship between physician and patient, to which plaintiff alludes. Although the relationship between physician and patient is contractual in its origins, the purpose of the relationship is to obtain the services of the physician in treating the patient. The patient reasonably expects the physician to follow the appropriate standard of care when providing those services. By contrast, the title company is providing not services, but a policy of insurance. That policy appropriately limits the rights and duties of the parties.

From this perspective, the insured expects that in consideration for payment of the premium, it will receive a policy of insurance. The insurer's expectation is that in exchange for that premium it will insure against certain risks subject to the terms of the policy. If the title company fails to conduct a reasonable title examination or, having conducted such an examination, fails to disclose the results to the insured, then it runs the risk of liability under the policy. In many, if not most, [sic] cases conduct that would constitute the failure to make a reasonable title search would also result in a breach of the terms of the policy. *Id.* 562 A.2d at 220 (citations omitted).

We also find instructive the Texas Court of Appeals' discussion of title insurance in *Houston Title Co.,* 733 S.W.2d at 327 (1987) (citations omitted):

The title insurance company is not, as is an abstract company, employed to examine title; rather, the title insurance company is employed to guarantee the status of title and to insure against existing defects.

Thus, the relationship between the parties is limited to that of indemnitor and indemnitee.

As Southeastern points out in its brief, we have described title insurance in terms similar to those employed by the Texas court. In *Blackhawk Prod. v. Chicago Ins.,* 144 Wis. 2d 68, 78, 423 N.W.2d 521 (1988), we explained:

> Title insurance has been described as a contract of indemnity. Its purpose is to indemnify the insured for impairment of its interest due to failure of title as guaranteed in the title insurance report. That is, it protects against losses sustained in the event that a specific contingency, such as the discovery of an unexpected lien affecting title, occurs.

This language and the language quoted above from other jurisdictions indicate that a title insurance company is not an abstractor of title employed to examine title. Rather, a title insurance company guarantees the status of title and insures up to the policy limits against existing defects. Thus, the only duty undertaken by a title insurance company in issuing a policy of insurance is to indemnify the insured up to the policy limits against loss suffered by the insured if the title is not as stated in the policy. As one court explained:

> The policy of title insurance, however, does not constitute a representation that the contingency insured against will not occur. Accordingly, when such contingency occurs, no action for negligence or negligent misrepresentation will lie against the insurer based upon the policy of title insurance alone. '[T]he insurer does *not* represent expressly or impliedly that the title is as set forth in the policy; it merely agrees that, . . . the insurer will pay for any losses resulting

from, or he will cause the removal of, a cloud on the insured's title within the policy provisions.' . . . 'A title policy is *not* a summary of the public records and the insurer is *not* supplying information; to the contrary he is giving a contract of indemnity. A title insurer, as any other insurer, can and does assume the risk of its policy.' *Lawrence v. Chicago Title Ins. Co.*, 192 Cal. App. 3d 70, 74–75 (1987) (citations omitted).

■

Similarly, the issuance of a title commitment does not, as Greenberg suggests, constitute an independent undertaking by the insurer to search the title for the benefit of the insured. Rather, the title commitment "generally constitutes no more than a statement of the terms and conditions upon which the insurer is willing to issue its title policy . . .." *Lawrence*, 192 Cal. App. 3d at 76. Any search done by an insurer in preparation for preparing a title commitment is done to protect itself in deciding whether to insure the property and to protect against losses covered in the policy.

Greenberg also argues that, even if the title commitment did not constitute a duty separate and distinct from the title companies contractual duties, this court's decisions in *Brooks v. Hayes,* 133 Wis. 2d 228, 395 N.W.2d 167 (1986) and *Colton v. Foulkes,* 259 Wis. 142, 47 N.W.2d 901 (1951) provide that accompanying every contract is a common law duty to perform with care, skill, reasonable diligence and faithfulness the thing they agreed to be done. He contends that the duty that accompanies his contract is for the insurance company to search and disclose reasonable defects.

Southeastern disputes this contention pointing to our decision in *Landwehr v. Citizens Trust Co.,* 110 Wis. 2d 716, 723, 329 N.W. 411 (1983) where we stated, "[We]

agree with the court of appeals that there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." Thus, Southeastern contends that in order for a cause of action to arise in tort in a contractual setting, the plaintiff must show an assumption of a duty that exists independent of the contract. We agree.

In *Colton,* this court allowed an action in tort against a defendant who allegedly negligently repaired the plaintiff's porch. The defendant contended that since his employer had contracted with the plaintiff to repair the porch, the cause of action was a breach of contract and no tort action could be maintained. In discussing our reasoning in allowing the action to proceed in tort, we concluded that there was a general duty of due care in repairing the porch to avoid personal injury, and thus the contract merely "create[d] the state of things which furnish[ed] the occasion of a tort." *Colton,* 259 Wis. at 146. Quoting 38 Am. Jur. *Negligence,* p. 661, sec. 20, we also stated that "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done . . .." *Id.*

██

However, we later explained the limits of *Colton* in *Landwehr,* 110 Wis. 2d 716. In *Landwehr,* we explained that our language in *Colton* was meant to indicate that the " 'state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort." *Landwehr,* 110 Wis. 2d at 723. We concluded that "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." *Id.* We reaffirm that holding today. We also note that *Brooks,* 133 Wis. 2d 228, although decided after *Landwehr,* merely quoted the lan-

guage from *Colton* and did not change the interpretation of that language provided in *Landwehr*.

Furthermore, even were we to agree with Greenberg's contention that an independent duty need not exist in order to bring a claim in tort because every contract contains a duty to perform with care, skill, reasonable diligence and faithfulness the thing they agreed to be done, we would conclude that no action against Southeastern can be brought in tort. Under the title insurance contract, Southeastern and Stewart did not agree to make a title search or to warranty title. Rather, they agreed to indemnify the insured·up to the policy limits for the impairment of its interest due to failure of title as guaranteed in the title insurance report. Thus, "the thing that is agreed to be done" under the policy is to indemnify the insured up to the amount stated in the policy for losses suffered due to a defect in title. There was no obligation under the contract to search the title, thus no duty could arise to search the title with due care and skill.

We therefore hold that a title insurance company and/or its agent is not liable in negligence for an alleged defect in title when it issues a title insurance policy unless it has voluntarily assumed a duty to conduct a reasonable search in addition to the mere contract to insure title.

We further hold that the issuance of a title commitment is not an assumption of an independent duty to search. In this case, the circuit court found that the relationship between Greenberg and the title insurance companies was purely contractual and therefore the companies' liabilities are limited to indemnifying the insured according to the express terms and limits of the

insurance policy. This finding is supported by the evidence in the record and is not clearly erroneous. *See, Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). The title companies did not assume an independent duty to Greenberg to examine title and conduct a reasonable search. Greenberg himself acknowledged the lack of such a duty in his deposition testimony:

> Q—Can you produce any documents, including either the title commitments or title policies, whereby any of the defendants took on the obligation to warranty title to these four units?
>
> A—I don't understand what warranty title means. Are you talking about insuring title? Are you talking about warranty against certain exceptions? Are your talking about a warranty as to marketability? I don't understand your question.
>
> Q—Okay. As a real estate lawyer and professor, you're generally aware of the content of standard title policies and title commitments; correct?
>
> A—Correct.
>
> Q—And nowhere in those documents is there any warranty of title; is there?
>
> A—There is not a warranty of title, but there is an insurance of marketable title.

Accordingly, we agree with the decision of the circuit court dismissing Greenberg's tort claims and its judgment is affirmed.

Lastly, Greenberg contends that even if the title insurance company (Stewart) did not have a duty to make a reasonable title search, the title insurer's agent (Southeastern) should be liable in tort. He reasons that Southeastern owes a duty by virtue of its actions in

allegedly negligently searching the record because its liability is not limited by the terms of a contract, as Southeastern was not a party to the contract. We disagree.

An agent of an insurance company owes a duty only to the insurance company. As one treatise notes, "[i]n the absence of special circumstances, including statutory or contractual provisions, an agent of the insurer who solicits or effects insurance clearly is not the agent of the insured." 43 Am. Jur. 2d *Insurance* p. 187, § 110 (1982). In the present case, Southeastern, the agent, performed its services solely for the benefit of the insurance company and owed no duty to Greenberg. Thus, no action in tort may be brought against Southeastern.

For the reasons set forth in this opinion, we affirm the judgment of the circuit court.

*By the Court.*—The judgment of the circuit court is affirmed.

JUSTICES DONALD W. STEINMETZ and JON P. WILCOX, took no part.