FIRST AMERICAN TITLE INSURANCE COMPANY,
Plaintiff-Respondent,

v.

Dennis A. DAHLMANN,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP2318. Oral argument April 25, 2006.
—Decided June 7, 2006.*

2006 WI 65

(Also reported in 715 N.W.2d 609.)

■■■■■■■■■■

■■■■

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

For the defendant-appellant-petitioner there were briefs by *Timothy J. Yanacheck* and *Bell, Gierhart & Moore, S.C.,* Madison, and oral argument by *Timothy J. Yanacheck.*

For the plaintiff-respondent there was a brief by *J. Bushnell Nielsen* and *Reinhart Boerner Van Deuren S.C.,* Waukesha, and oral argument by *J. Bushnell Nielsen.*

¶ 1. N. PATRICK CROOKS, J. Petitioner Dennis A. Dahlmann (Dahlmann) seeks review of an unpublished decision of the court of appeals,[1] affirming the circuit court's declaratory judgment in favor of First American Title Insurance Company (First American). The issue before this court is whether an encroachment by an improvement onto adjacent land constitutes a defect or encumbrance in the title of the insured property for the purpose of the title insurance contract at issue in this case.

¶ 2. We reverse the decision of the court of appeals. We hold that a substantial encroachment, created by an improvement onto adjacent land, constitutes an encumbrance on the title of the insured property for the purpose of the title insurance contract at issue in this

[1] *First Am. Title Ins. Co. v. Dahlmann,* No. 2004AP2318, unpublished slip op. (Wis. Ct. App. Oct. 13, 2005).

159

case. We further hold that such a substantial encroachment, and thus an encumbrance, is covered under the terms of the title insurance policy at issue. However, the issue of whether the encroachment here is "substantial," so as to constitute an encumbrance on title, for purposes of the title insurance contract, presents a question of fact for the trier of fact to resolve.[2] We, therefore, remand the case to the circuit court for such a determination.

## I

¶ 3. On January 15, 1999, Dahlmann purchased the Madison Inn (Inn), a hotel that abuts Frances Street in Madison. At the time Dahlmann purchased the Inn, he also purchased title insurance from First American on the property.[3] The policy provided:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY . . . insures . . . against loss or damage . . . sustained or incurred by the insured by reason of:

1) Title to the estate or interest described in Schedule A being vested other than as stated therein;

---

[2] Petitioner presents an alternate question of whether the encroachment here renders the title unmarketable, and therefore falls within the insurance coverage. Because we resolve the issue on the basis of an encumbrance on title, we need not reach the question of unmarketability, but note that such an issue also presents questions for the trier of fact. *See Mellinger v. Ticor Title Ins. Co.,* 93 Cal. App. 4th 691, 697 (2001).

[3] The policy affords Dahlmann $2,150,000 in coverage; the premium was $1,182.50.

2) Any defect in or lien or encumbrance on the title;

3) Unmarketability[4] of the title[.] ´

¶ 4. In addition, the policy defined the "land" for which title is being insured:

[T]he land described or referred to in Schedule (A),[5] and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A), nor any right, title, interest, estate or easement in abutting streets, roads, avenues. . . .

¶ 5. In issuing the title insurance policy, First American relied upon a survey completed by Jeffrey Johnson in 1994 (Johnson survey), and an affidavit from the landowner who sold the Inn to Dahlmann. The Johnson survey depicted the encroachment of an exterior wall of the parking garage and a vent into a four-foot right-of-way.[6] However, the survey did not depict the encroachment of the garage under Frances Street. The seller's affidavit stated that no changes had

---

[4] The policy defines "unmarketability of the title" as

an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring delivery of marketable title.

[5] Schedule A provides, in relevant part, "[t]he land referred to in this policy is described as follows: Lot Seven (7), and the East 25 feet of Lot Six (6), Block Seven (7), Original Plat of the City of Madison, Dane County, Wisconsin."

[6] The encroachment of the exterior wall of the parking garage and the vent into the four-foot right-of-way was specifically identified as an exception to coverage in both Schedule B and in an appended endorsement.

been made to the Inn to affect the structure's size or location since the Johnson survey was conducted. As a result, at the request of Dahlmann's attorney, First American agreed to omit from the title insurance policy two potentially relevant exceptions, which were included in the standard form title commitment[7]: (1) "Any discrepancies or conflicts in boundary lines, any shortages in area, or any encroachment or overlapping of improvements." (Encroachment exception); (2) "Any facts, rights, interests or claims which are not shown by the public record but which could be ascertained by an accurate survey of the land." (Survey exception). As a result of the policy amendments, Dahlmann paid an additional premium.

¶ 6. The Inn and its underground parking garage were built in 1960. From the time of its initial construction, the parking garage encroached upon the land beneath Frances Street, which is owned by the City of Madison (City). Although the encroachment is not recorded in any record maintained by the City, the original building plans depict the encroachment. The City discovered the encroachment in March 2002 when it was repairing a sidewalk adjacent to the Inn. Upon discovering the encroachment, the City sought to collect a $3,980 annual fee from Dahlmann for the privilege of encroaching under Frances Street pursuant to a city ordinance. Otherwise, the City suggested it would require Dahlmann to remove the encroachment.[8]

---

[7] "A title commitment is a document which describes the property as the title insurer is willing to insure it and contains the same exclusions and general and specific exceptions as later appear in the title insurance policy." *Greenberg v. Stewart Title Guar. Co.,* 171 Wis. 2d 485, 488, 492 N.W.2d 147 (1992).

[8] The encroachment occupies 1,980 square feet.

¶ 7. In response to the City's demand for the privilege fee, Dahlmann requested that First American provide a defense and indemnification. First American, in turn, filed this action, seeking a declaratory judgment that its policy did not afford Dahlmann coverage for the encroachment. The Dane County Circuit Court, John C. Albert, Judge, agreed with First American, and granted the motion for a declaratory judgment. The circuit court determined that the policy did not afford coverage because the policy only covered the land within the legal description in Schedule A. Therefore, because the encroachment was outside the described property, it did not fall within the title insurance coverage. The court of appeals affirmed, and Dahlmann petitioned for review.

II

■

¶ 8. The facts were stipulated to before the circuit court, including the date of purchase, the existence of an encroachment from the time the Inn was built, the absence of the buyer's agent's knowledge of the encroachment, and the striking of the Survey and Encroachment exceptions from the title policy. Since the parties do not dispute any of the facts, this case presents a question of law, of insurance policy interpretation, which this court reviews de novo. *Mau v. N.D. Ins. Reserve Fund,* 2001 WI 134, ¶ 12, 248 Wis. 2d 1031, 1041, 637 N.W.2d 45; *Blackhawk Prod. v. Chicago Ins.,* 144 Wis. 2d 68, 77, 423 N.W.2d 521 (1988).

III

¶ 9. The issue before this court is whether the encroachment of the Inn's parking garage onto property owned by the City is covered under First American's

policy as an "encumbrance on the title." The parties dispute the correct interpretation of the policy, and in particular, the significance of the deletion of the Survey and Encroachment exceptions.

¶ 10. Dahlmann argues that coverage for the Inn's encroachment onto City land under Frances Street exists under the title insurance policy, as the encroachment constitutes an encumbrance on the title. Dahlmann maintains that it does not matter whether a structure encroaches upon the insured property, or a structure on the insured property encroaches upon adjacent land—if the encroachment is substantial, the result is an encumbrance on the title of the insured property, and the title insurance policy insures him against any damage or loss caused by such an encumbrance on his title. Dahlmann further contends that deleting the Survey and Encroachment exceptions from Schedule B demonstrates the parties' intent to insure against an encroachment such as the one at issue in this case.

¶ 11. First American does not claim that any exclusion or exception from coverage precludes coverage. Rather, First American claims that the loss for which Dahlmann seeks compensation does not fall within the initial grant of coverage, as limited by the definition of "land" in Schedule A. First American argues that the title insurance policy does not insure the title to any property beyond the bounds of what is described in Schedule A. In other words, there is no encumbrance on title, because Dahlmann does not have title to any part of Frances Street. Further, it is First American's position that the policy insures the title to a specifically described piece of land, and land is defined in the policy to exclude "any property beyond the lines of the area described or referred to in Schedule A," as

well as "any right, title, interest, estate or easement in abutting streets, roads, avenues. . . ." First American notes that the policy issued to Dahlmann is a standard form, which many other jurisdictions have had occasion to interpret as failing to provide coverage for encroachments similar to that in the present case.[9]

¶ 12. "Title insurance is a contract of indemnity which obligates the title insurer to pay loss as defined by the policy." Duane H. Wunsch, *Wisconsin Commercial Real Estate Transactions*, § III-1 (2000). The purpose of title insurance "is to indemnify the insured for impairment of its interest due to failure of title as guaranteed in the title insurance report." *Greenberg v. Stewart Title Guar. Co.*, 171 Wis. 2d 485, 493, 492 N.W.2d 147 (1992)(quoting *Blackhawk*, 144 Wis. 2d at 78).

¶ 13. There are three steps necessary in our consideration of whether the encroachment of the Inn

---

[9] *See Havstad v. Fid. Nat'l Title Ins. Co.*, 58 Cal. App. 4th 654, 660 (1997)(title insurance policy did not insure title to improvements that encroached into a public street when the policy "clearly and explicitly" defined "land" not to include "any property beyond the lines of the area described . . . in Schedule A, nor any right, title, interest, estate or easement in abutting streets . . ." (emphasis omitted)); *Heyd v. Chicago Title Ins. Co.*, 354 N.W.2d 154 (Neb. 1984)(title insurance policy did not cover the encroachment of insured's house onto public street because encroachment did not create a defect in title to insured land); *Transamerica Title Ins. Co. v. Northwest Bldg. Corp.*, 773 P.2d 431, 433 (Wash. 1989)(title insurance policy did not insure title to paved area encroaching onto adjacent private land, as "[t]he encroaching areas of land and improvements at issue extend beyond the borders of the legal description, and thus are expressly excluded from coverage by the policy's unambiguous terms.")(abrogated by *Denny's Restaurants, Inc. v. Sec. Union Title Ins. Co.*, 859 P.2d 619 (Wash. Ct. App. 1993)).

parking garage onto adjoining property is covered under the terms of the title policy. First, we must determine when an encroachment constitutes an "encumbrance on title." Second, we need to examine the terms of the policy, including the effect of the omission of the Survey and Encroachment exceptions. Finally, we must discuss the effect on coverage of the definition of "land" in Schedule A.

A

¶ 14. A title defect is a claim or interest that is inconsistent with the title purportedly transferred. *Turner v. Taylor,* 2003 WI App 256, ¶ 8, 268 Wis. 2d 628, 673 N.W.2d 716. One treatise explains there are four types of defects: (1) defects in the chain of title; (2) lack of record title because the seller claims ownership through adverse possession; (3) lack of title in the seller because a third-party claims adverse possession against the seller; and (4) encumbrances. 14 Michael Allan Wolf, *Powell on Real Property* § 81.03[6][d], at 81–126 to 81–127 (2000). The only type of defect relevant in this case is an encumbrance.

¶ 15. An encumbrance is a " 'claim or liability that is attached to property . . . that may lessen its value. . . .' " *O'Connell v. O'Connell,* 2005 WI App 51, ¶ 12, 279 Wis. 2d 406, 694 N.W.2d 429 (citation omitted). Examples of encumbrances include leases, mortgages, easements, and encroachments. *Powell* § 81.03[6][d], at 81–132 to 81–136. Thus, the question of whether the policy affords coverage for the encroachment by the parking garage under Frances Street

turns, first, on the question of whether this particular encroachment is an "encumbrance on the title."

¶ 16. In *In re Meehan,* this court considered a case in which the buyer of a motel sued the seller for breach of warranty against encumbrances, after learning that part of a stone wall and a sign for the motel at issue encroached upon a public right-of-way. *In re Meehan,* 30 Wis. 2d 428, 430–31, 141 N.W.2d 218 (1966). The court concluded that the warranty against encumbrances extended to structures originating on the seller's property that encroach upon adjoining property. *Id.* at 433.

> An encroachment occurs not only when a structure on adjoining property encroaches substantially on your property without the benefit of an appurtenant easement, but conversely, when a structure on your property encroaches upon the adjoining property without the benefit of such an easement. A warranty against [e]ncumbrances extends to both types of encroachment.

*Id.* (footnote omitted). The *Meehan* court also held that "an encroachment amounts to an [e]ncumbrance if it is substantial." *Id.* at 432 (footnote omitted).

¶ 17. The *Meehan* court laid out four factors to be considered "in determining whether or not a substantial encroachment exists . . . [1] 'the character or extent of the encroachment, [2] the cost or possibility of its removal, [3] the length of time the encroachments had continued, [and] [4] municipal acquiescence, or the like.' " *Id.* at 433 (citation omitted) (citing L.S. Tellier, Annotation, *Encroachment of Structure on or Over Adjoining Property or Way as Rendering Title Unmarketable,* 47 A.L.R.2d 331, 335, § 2 (1956)).

¶ 18. The Inn's parking garage is an encroachment onto the City's property. Although *Meehan* concerned a title warranty, as opposed to title insurance,

the *Meehan* court set forth a test to determine whether an encroachment was substantial, so as to constitute an encumbrance.[10] *Meehan,* 30 Wis. 2d at 432–33. We can see no reason why the reasoning of *Meehan* should not be extended to an analogous situation involving title insurance. Both title insurance and title warranties exist to protect a buyer from an unknown defect or defects.[11] Furthermore, property law is best served by applying consistent meanings to language used in the same or a similar context. We, therefore, conclude that the *Meehan* test should be applied to this case to determine if an encroachment is substantial, so as to constitute an encumbrance on title.

¶ 19. While articulating the factors to be considered in assessing the substantiality of an encroachment, *Meehan* is silent on whether each of the factors deserves equal weight, or if the factors are to be applied in an equitable manner, weighing the totality of circumstances. We conclude that a court should apply the *Meehan* factors using a totality of the circumstances approach. We reach this conclusion for two reasons.

[10] The *Meehan* court adopted the rule regarding substantiality based upon what was the general rule in the United States. Citing L.S. Tellier, Annotation, *Encroachment of Structure on or Over Adjoining Property or Way as Rendering Title Unmarketable,* 47 A.L.R.2d 331 (1956), the court explained, "[a]lthough this appears to be a question of first impression in Wisconsin, the rule elsewhere is that an encroachment amounts to an [e]ncumbrance if it is substantial." *In re Meehan,* 30 Wis. 2d 428, 432, 141 N.W.2d 218 (1966).

[11] Defects known to both parties are exceptions from coverage, unless otherwise addressed in Schedule B and/or a separate endorsement. Encroachments known to the buyer, but unknown to the title insurance company, are specifically excluded from coverage.

¶ 20. First, the *Meehan* factors were drawn from 47 A.L.R.2d 331. Based on the summary of cases reported by the author in A.L.R.2d, it appears most courts employ an equitable, totality of the circumstances analysis, with a heavy emphasis on how much the structure physically encroaches, and how much it would cost to remove the encroachment. *See, e.g., Loeffler v. Roe,* 69 So.2d 331 (Fla. 1954); *Sinclair v. Weber,* 104 A.2d 561 (Md. 1954). Second, substantiality is a relative concept, and the test itself does not lend itself to a bright-line approach.

¶ 21. The issue of whether an encroachment is substantial, and thus constitutes an encumbrance, presents a question for the trier of fact to resolve.[12] We, therefore, remand that issue to the circuit court for determination of whether, based upon the totality of the circumstances, the encroachment of the Inn's parking garage is substantial, so as to constitute an encumbrance.

¶ 22. If the circuit court finds the encroachment of the garage to be substantial, and thus an encumbrance, it becomes necessary to resolve the issue of

[12] *Meehan,* 30 Wis. 2d at 433. *See also Mellinger,* 93 Cal. App. 4th at 696; and *see Wilson v. Pac. Coast Title Ins. Co.,* 235 P.2d 431, 433 (Cal. Ct. App. 1951) wherein the California Court of Appeal clearly stated that: "[w]hether such title was defective was a question of fact for the determination of the trial court, as was the question of whether such title was 'unmarketable.' " As we have stated earlier, an encumbrance is one type of title defect. *See Supra* ¶ 14.

We acknowledge, however, that there may be extreme situations when the encroachment is so de minimis or so complete that the court may determine the question as a matter of law. *See Mellinger,* 93 Cal. App. 4th at 697.

169

whether the title insurance policy here covers such an encumbrance. To do so, we must next consider the effect of the deletion of the Survey and Encroachment exceptions.

B

¶ 23. The title insurance policy issued to Dahlmann by First American provides: "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN . . . insures . . . against a loss or damage . . . sustained or incurred by the insured by reason of . . . [a]ny defect in or lien or encumbrance on the title."

¶ 24. "Title insurance policies are subject to the same rules of construction as are generally applicable to contracts of insurance." *Laabs v. Chicago Title Ins. Co.,* 72 Wis. 2d 503, 510, 241 N.W.2d 434 (1976) (citations omitted). "An insurance policy must be construed with consideration for what a reasonable person in the position of the insured would have understood its words to mean." *Id.* at 511 (citing *Luckett v. Cowser,* 39 Wis. 2d 224, 231, 159 N.W.2d 94 (1968)). Furthermore, "[a] construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent. . . ." *Id.,* (citing *Inter-Insurance Ex. v. Westchester Fire Ins. Co.,* 25 Wis. 2d 100, 106, 130 N.W.2d 185 (1964)). Construction of an insurance policy presents a question of law; "it is the process that determines the legal consequences that follow from a

contractual term." *Denny's Restaurants, Inc. v. Sec. Union Title Ins. Co.*, 859 P.2d 619, 623 (Wash. Ct. App. 1993).

¶ 25. Title insurance policies contain two types of provisions that reduce coverage: exclusions and exceptions. " 'Exclusions and exceptions are similar in that each class of items limits the coverage of the policy. However, exclusions refer to subjects beyond the ambit of the policy, while exceptions are matters generally within the scope of the insuring provisions.' " Wunsch at § III-6 (quoting J. Nielsen, *Title Escrow Claims Guide*, § 12.1, at 354 (1996)). Exceptions, not exclusions, are at issue in this case.

¶ 26. Commentators have noted that:

[r]ecently, title insurers have indicated a willingness to delete the survey exception from the [American Land Title Association][13] loan policy, when issued, to insure mortgages involving commercial property, without a current land survey, provided that a non-contemporaneous land survey of the same property is supplied for examination along with an affidavit by the landowner to the effect that nothing described in the non-contemporaneous land survey has changed.

Wunsch at § III-9.[14] This is, of course, precisely what occurred in this case.

---

[13] The American Land Title Association, founded in 1907, is the national trade association representing the title insurance industry.

[14] "The least negotiable of the standard policy exceptions is the standard survey exception." Duane H. Wunsch, *Wisconsin Commercial Real Estate Transactions*, § III-8 (2000). Title insurers generally demand a current land survey and surveyor's certificate, which the title insurance provider then examines for encroachments. *Id.* at § III-8 - 9. "[A]t a minimum, the surveyor

¶ 27. In *Greenberg v. Stewart Title,* this court explained:

> the issuance of a title commitment does not . . . constitute an independent undertaking by the insurer to search the title for the benefit of the insured. Rather, the title commitment "generally constitutes no more than a statement of the terms and conditions upon which the insurer is willing to issue its title policy . . . ." *Any search done by an insurer in preparation for preparing a title commitment is done to protect itself in deciding whether to insure the property and to protect against losses covered in the policy.*

*Greenberg,* 171 Wis. 2d at 494, (internal citation omitted). It is generally recognized that "[t]itle insurance is unique in the world of insurance, for it is based largely upon a search of the public records of interests in real property to ascertain pre-existing defects. This places the title insurer in the 'unique position of being able, through its own work, to eliminate claims.' " Paul Bintinger, *Conflict of Interest: Attorney as Title Insurance Agent,* 4 Geo. J. Legal Ethics 687, 690 (1991) (quoting D. Burke, *Law of Title Insurance 2,* 22 (1986)).

¶ 28. We are satisfied that the deletion of exceptions does not, in and of itself, create coverage where none exists. *See* Barlow Burke, *Law of Title Insurance,* § 9.03 at 9–10 (3d ed. 2000) ("An exception is not the opposite of coverage and so eliminating it does not automatically provide coverage."). However, the effect of the deletion of the Schedule B standard exceptions supports Dahlmann's position, that the policy covers an

---

should certify that he has examined the property for encroachments, that the survey depicts all buildings, structures, fences and improvements, and that the description represents a complete and accurate description of the land." *Id.* at § III-9.

172

encumbrance on title, in at least two ways. First, the deletion of the Survey and Encroachment exceptions has an effect on the plain meaning of the policy, which, along with the additional premium Dahlmann paid, may be properly read as having created an "extended" policy. Second, the elimination of the two exceptions speaks to the reasonable expectations of the parties, especially the insured, to the contract. Both of these issues must be considered against the background that title insurance is intended, at least in part, to protect the buyer of the insurance/property.

¶ 29. First American argues that it waived the Survey and Encroachment exceptions from Schedule B because the policy was amended to include coverage for the known encroachment of the parking garage wall and the vent into the four-foot right-of-way. First American explains that the right-of-way encroachment would have been excepted from coverage, were it not for the payment of an additional premium paid by Dahlmann. First American also contends that its policy does not insure against the risk of unknown encroachments. It maintains that the deletion of the Survey and Encroachment exceptions was intended to cover other aspects of the property.

¶ 30. First American's arguments are, ultimately, unconvincing. In its willingness to delete the Survey exception, and rely on the accuracy of the Johnson survey, First American assumed the risk that it would be providing coverage for an encroachment not documented on the land survey. If the policy exceptions were intended to be waived only with respect to the known encroachment, First American certainly was experienced and sophisticated enough to state this limited waiver of the exceptions by so stating in the policy. Its

failure to do so leads to the logical conclusion that the parties contracted to cover encroachments through the deletion of the exception.

¶ 31. Under a standard policy in which all Schedule B exceptions are present, no encroachments are covered by the policy, even substantial ones. Under an extended policy, the parties may agree to remove some exceptions to coverage, exposing the title insurer to greater liability under the policy. *See Denny's,* 859 P.2d at 621–22, 627–28. The effect of removing much of the substance of Subsection B, along with the additional premium Dahlmann paid, had the effect of providing Dahlmann with "extended coverage." Furthermore, the logical application of *Meehan's* treatment of substantial encroachments leads to a conclusion that policies that do not except encroachments cover loss or damage due to a substantial encroachment, consistent with the encumbrance provision of the policy, here.

¶ 32. Construing the policy to include coverage for defects based upon a substantial encroachment seems consistent with the reasonable expectation of the insured here.

¶ 33. Other jurisdictions faced with construing similar contract provisions have reached the same conclusion. For example, in *Rackouski v. Dobson,* 634 N.E.2d 1229 (Ill. App. Ct. 1994), the Illinois Appellate Court considered a case in which the title insurance contract which covered loss or damage due to an encumbrance on title under Schedule A, had also modified Schedule B to delete the standard exceptions, including the exception for encroachments.

¶ 34. The Illinois court held that the encroachment of the insured's barn upon adjoining property was covered under the policy, because the waiver of standard exceptions to coverage was evidence that the

174

parties agreed to cover encroachments under the Schedule A terms. *Id.* at 1231. The *Rackouski* court reasoned that when an insurer expressly waives exceptions to coverage for encroachments, the logical conclusion is that coverage is available for encroachments. *Id.*

¶ 35. Similarly, in *Denny's* the Washington Court of Appeals held that the deletion of the standard exceptions created ambiguity in regard to the extent of policy coverage. The Washington court concluded that extrinsic evidence of the party's intent supported a finding that the policy provided coverage for encroachments.

¶ 36. The *Denny's* court reasoned that the rationale for "extended coverage" is so that items excluded in the standard contract will be covered in the policy at issue. The same reasoning should be applied to the case before us. Additionally, the Washington court said that logic compels this result: "Logically, a deleted exclusion indicates that the former exclusion is no longer applicable; any other result would undermine the rationale for paying additional consideration to obtain extended coverage." *Denny's,* 859 P.2d at 627.

¶ 37. Ordinarily, the existence of the Survey exception and the Encroachment exception in Schedule B make it clear that the risk insured against is limited to the risk of a defect in the chain of title or some other recorded encumbrance on the title. When these exceptions are present, a title insurer should only be liable for defects in the record of the title. Absent these exceptions or other applicable exclusions, however, it would seem that coverage extends to any discrepancy between the record of title and the physical reality of the corresponding property. Therefore, a plain reading of the language of the contract, and the reasonable

expectation of the insured, lead to the conclusion that an undetected encroachment is covered by the title insurance policy.

C

¶ 38. Before we conclude that a substantial encroachment onto adjacent property constitutes an encumbrance on title that is covered under the terms of this policy, we must also consider the effect of a finding of coverage in relation to the policy's definition of "land" in Schedule A. At the heart of the arguments made by First American is its claim that the title insurance policy does not insure title to any property beyond the bounds of what is described in Schedule A. In other words, First American argues that the policy only covers encumbrances on title for land listed in Schedule A in accord with the contract definition of land. We are satisfied that such an argument misconstrues the purpose of title insurance as insuring land rather than insuring title. Again, we turn to precedent from other jurisdictions that have considered issues similar to those in this case.

¶ 39. In concluding that the title insurance policy covered the encroachment of an improvement onto adjoining property, the Illinois court in *Rackouski* explained "[t]he policy insures against defects or clouds in . . . title to the land, not the land itself." *Rackouski,* 634 N.W.2d at 1231. The court reasoned that, to construe the word "land . . . to exclude coverage for the encroachment . . . would contradict the apparent intent of the parties demonstrated by the execution of the policy with the standard exclusions deleted." *Id.*

¶ 40. The *Denny's* court cited *Shotwell v. Transamerica Title Ins. Co.,* 588 P.2d 208 (Wash. 1978), for the notion that "often policy descriptions were taken

directly from the deed conveying title, and the purpose of the legal description in a title insurance policy was to identify the land covered, not to limit the protection." *Denny's,* 859 P.2d at 626 (citing *Shotwell,* 588 P.2d at 213). In *Shotwell,* the Washington Supreme Court rejected the position that the description of land within the policy limited the insurance protection. The court in *Denny's* followed similar reasoning in its conclusion that "the purpose of the legal description in a title insurance policy was to identify the land covered, not to limit the protection. To limit protection to that found in the legal description would effectively require purchasers of title insurance to become their own insurers." *Denny's,* 859 P.2d at 626 (citation omitted).

¶ 41. The *Denny's* court reasoned that a "restrictive definition of 'land' becomes ambiguous in light of circumstances indicating the purpose of the extended coverage policy is to insure against off-record defects, defects which may fall outside the legal description of land contained within the policy." *Id.* We agree that the definition of "land" is ambiguous, in light of the omission of the Survey and Encroachment exceptions. Therefore, because ambiguous terms in an insurance policy are construed against the drafter, we conclude that the definition of "land" is not controlling on the scope of coverage, and, therefore, that the definition of "land" in Schedule A does not limit coverage. *Frost v. Whitbeck,* 2002 WI 129, ¶ 19, 257 Wis. 2d 80, 654 N.W.2d 225. As we have previously stated, "ambiguous terms are to be construed in favor of coverage, and exclusions are to be narrowly construed against an insurer." *Id.* (footnotes omitted).

IV

¶ 42. We reverse the decision of the court of appeals. We hold that a substantial encroachment, created by an improvement onto adjacent land, constitutes an encumbrance on the title of the insured property for the purpose of the title insurance contract at issue in this case. We further hold that such a substantial encroachment, and thus an encumbrance, is covered under the terms of the title insurance policy at issue. However, the issue of whether the encroachment here is "substantial," so as to constitute an encumbrance on the title of the insured property, for purposes of the title insurance contract, presents a question for the trier of fact to resolve. We, therefore, remand the case to the circuit court for such a determination.

*By the court*—The decision of the court of appeals is reversed, and the case remanded to the circuit court for further proceedings consistent with this opinion.